STATE OF FLORIDA, ex rel. CARY D. LANDIS, Attorney General, *Plaintiff in Error,* vs. H. CLAY ARMSTRONG, J. T. BAILLES, MAX L. BEAR, et al., *Defendants in Error.*

137 So. 140.

En Banc.

Opinion filed October 16, 1931.

*J. McHenry Jones* and *Reese & Reese*, for Plaintiff in Error;

*Carter & Yonge, J. J. Sullivan* and *E. E. Mason*, for Defendants in Error.

BUFORD, C.J.—The Legislature of Florida at its regular session in 1931 passed House Bill 197 and Senate Bill 936. The House Bill was passed first and later the Senate Bill was passed to supplement and amend the House Bill.

As special Acts of the Legislature have not been published in bound form, we quote that part of the two Acts under consideration which are essential to the disposition of this case. The title to House Bill 197 was as follows:

"AN ACT RELATING TO THE CITY OF PENSA-COLA, GRANTING POWERS TO SAID CITY, CHANGING THE FORM OF GOVERNMENT, CREATING A COUNCIL FORM OF GOVERNMENT WITH A CITY MANAGER AS ADMINISTRATIVE HEAD WHOSE DUTIES ARE DEFINED, AND WHO IS TO ACT UNDER AND BE *RESPONSIBLE* TO THE CITY COUNCIL, INVESTIGATION OF TRANSACTIONS OF DEPARTMENTS AND OFFI-CIALS, CREATING ADMINISTRATIVE DEPART-MENTS AND BOARDS, DEFINING DUTIES OF EACH; PROVIDING FOR FINANCE AND TAXA-

TION, PAYMENT OF CLAIMS, KEEPING OF FUNDS, ACCOUNTS AND ISSUING WARRANTS; PROVIDING FOR INDEBTEDNESS, CREATING TAX ASSESSOR AND BOARD OF EQUALIZATION: ALSO PROVIDING FOR THE ASSESSMENT AND COLLECTION OF TAXES; PROVIDING FOR FRANCHISES, COURTS AND FINES AND BONDS OF OFFICIALS; CREATING A CIVIL SERVICE BOARD FOR CITY EMPLOYEES AND PRESCRIBING RULES AND REGULATIONS FOR CIVIL SERVICE AND APPLICANTS AND EMPLOYEES; PROVIDING FOR COMPENSATION OF COUNCIL, MAYOR, OFFICERS AND EMPLOYEES; PROHIBITING CERTAIN ACTS OF OFFICIALS; PROVIDING FOR OATH OF OFFICIALS, PENSION FUND AND THE CONTINUANCE OF PRESENT OFFICIALS AND EMPLOYEES UNTIL REPLACED, and OFFICIAL HOURS; PROVIDING FOR DIVISION OF THE CITY INTO WARDS, AND FOR THE ELECTION FOR THE RATIFICATION OF THIS CHARTER, AND THE ELECTION OF COUNCILMEN AS PROVIDED; AND THE ADOPTION OF MEASURES FOR CARRYING OUT THE ABOVE.''

Section 100 of House Bill 197 was as follows:

''Immediately on the passage and approval of this Act the Registration Officer of the City of Pensacola shall open and keep open the Registration books for registering voters until ten days prior to the date of the election for the ratification of this charter when the said Registration books shall be closed and remain closed until after such election. Any registered voter, not exempt from the payment of poll tax, who shall have paid poll tax as due ten days prior to said ratification election shall be a qualified voter entitled to vote therein.

(2) It shall be the duty of the Clerk of the Circuit Court of Escambia County, Florida, and he is hereby required within twenty-five days from the passage and approval of this Act by the Governor to call and hold a special election in accordance with the laws of Florida governing elections at the expense of the City of Pensacola, for the purpose of having this charter adopted or rejected by a majority of the qualified voters of the City of Pensacola participating in said special election.

The returns of said special election shall be made to the Clerk of the Circuit Court of Escambia County, Florida, and he shall under his hand and seal, certify the result of said election, which certificate shall remain on file in his office for public inspection. The Clerk of the Circuit Court of Escambia County, Florida, for his compensation shall be entitled to the sum of fifty dollars. At said special election to be so called and held a ballot shall be furnished to each qualified voter applying to vote, upon which ballot the following proposition shall be submitted to the voters of said City; 'Do you ratify and approve the Council-Manager charter for the City of Pensacola as enacted by the Legislature of Florida, Session of 1931, subject to the ratification and approval of the qualified voters of said City?

Yes _____
No _____

(3) If a majority of the votes cast at such special election be in favor of such proposition, confirming and ratifying this charter, the Clerk of the Circuit Court of Escambia County, Florida, is hereby required to call and hold a special election, in accordance with the laws of the City of Pensacola governing elections, within forty five days after the approval and ratification of this charter, by a majority of the voters voting in said special election, for the purpose of electing councilmen as provided in this Act, which election shall be held on a Monday.

(4) Candidates for councilmen in such election to be held under this act, shall be certified to by their political parties, or present their petitions as candidates to the said Clerk of the Circuit Court within the time and according to the laws of Florida governing elections in order to have their names printed on the official ballot: The compensation of the said Clerk of the Circuit Court for holding such election shall be the same as for holding the election before mentioned in this section.

(5) The councilmen certified by the Circuit Clerk as having been elected in said special election shall qualify and enter upon the duties of councilmen at noon on the Monday succeeding the election and will continue to hold office until noon on the second Monday in June, 1933, A. D.

(6) An election for councilmen shall be held on the first Monday in June, 1933, A. D., and councilmen elected at such election shall qualify and enter upon the duties of councilmen at noon on the Monday of June succeeding such election. On the first Monday of June of every odd numbered year thereafter an election for councilmen shall be held and the councilmen so elected shall qualify and enter upon the duties of councilmen at noon on the Monday succeeding their election.

(7) In the event of an injunction or other Court proceedings preventing the holding of said election or elections within the periods mentioned, the said election or elections shall be held within the periods specified dating from the termination of such litigation.''

Section 103 of House Bill 197 was as follows:

''THIS ACT shall become effective immediately upon its passage and approval by the Governor, or become a law without his approval, for the purpose of calling and holding the election herein provided for in the adoption of the city charter provided for by this Act. If a majority of the qualified voters of the City of Pensacola, voting in the special election herein provided to be called and held for the purpose of ratifying and approving this charter, vote in favor of and for its ratification and approval, the same shall become effective immediately as the charter of the City of Pensacola.''

The title to Senate Bill 936 was as follows:

''AN ACT PROVIDING FOR THE SUBMISSION TO THE QUALIFIED ELECTORS OF THE CITY OF PENSACOLA, AT THE TIME OF THE CHARTER ELECTION PROVIDED FOR IN HOUSE BILL NO. 197, OF THE REGULAR SESSION OF THE LEGIS- LATURE OF 1931, ENTITLED 'An Act Relating to the City of Pensacola, Granting Powers to said City, Changing the Form of Government, Creating a Council Form of Government with a City Manager, as Administrative Head, whose Duties are Defined, and who is to Act Under and be Responsible to the City Council, Investigation of Transactions of Departments and Officials, Creating Administrative Departments and Boards, Defining the Duties of each; Providing for Finance and Taxation, Payment of Claims, Keeping of Funds, Accounts and Issuing Warrants; Providing for Indebted-

ness, Creating Tax Assessor and Board of Equalization; also Providing for the Assessment and Collection of Taxes; Providing for Franchises, Courts and Fines, and Bonds of Officials; Creating a Civil Service Board for City Employees, and Prescribing Rules and Regulations for Civil Service and Applicants and Employees; Providing for Compensation for Council, Mayor, Officers and Employees, Prohibiting Certain Acts of Officials; Providing for Oath of Officials, Pension Fund and the Continuance of Present Officials and Employees until Replaced, and Official Hours; Providing for Division of the City into Wards, and for the Election for the Ratification of this Charter, and the Election of Councilmen, as provided; and the Adoption of Measure for Carrying out the above of an Alternative Charter Relating to and Affecting the Government of said City; Amending said Act above Entitled to Provide for such Submission, and to Alter and Reorganize the Government of said City, under said Alternative Charter, if so adopted.''

That part of section 2 of the Bill amending section 100 of the House Bill, supra, was as follows

''Immediately upon the passage and approval of this Act the Registration Officer of the City of Pensacola shall open and keep open the registration books of the said city, for the registering of such voters as are not already lawfully registered until ten days prior to the date of the election for the adoption of one other, or neither, of the proposed charters for the said City herein provided for, when said registration books shall close and remain closed until after such election. Any voter duly registered, then or heretofore, who may be exempt from the payment of poll tax, or who shall have paid such tax for the year 1930, ten days prior to such election shall be entitled to vote therein.

(a) It shall be the duty of the Clerk of the Circuit Court of Escambia County, Florida, and he is hereby required within ten (10) days after this Act shall become a law, to call an election, to be held in the City of Pensacola, on the third Tuesday in July A. D. 1931, to determine whether or not the qualified electors of said City desire to adopt one, or other, or neither, of the proposed charters for said City, to be submitted under

the provisions of law. The said Clerk shall cause notice of the calling of said election to be published not less than once each week, for four consecutive times, in some newspaper published in the City of Pensacola, and said election shall be held, and all expenses thereof paid, in like manner as is now provided for the conduct of elections for City Commissioners of said City, save that the Clerk of the Circuit Court aforesaid shall name and designate all election officers, shall cause the ballots to be prepared, and shall receive and canvass the returns of such election and certify the result thereof under his hand and seal, and shall perform all other duties incumbent upon the Board of Commissioners of the City of Pensacola, in connection with elections for City Commissioners, as aforesaid; the said certificate as to the result of said election shall remain on file in the office of said Clerk for public inspection. The cost of calling and conducting such election, including the cost of preparation of ballots therefor, the pay of election officers thereat, and the compensation of the Clerk of the Circuit Court for his services therein, which is hereby fixed at Fifty ($50.00) dollars, shall, when properly certified by said Clerk to the Board of Commissioners of the City of Pensacola, operate as an appropriation, prior in dignity to all others, of any general funds of said city unexpended, and the proper officers of said City shall upon such certification draw and issue a warrant or warrants therefor, and make payment thereof accordingly. At said special election a ballot shall be furnished to each elector applying to vote thereat, printed substantially as follows:

Vote 'Yes' or 'No' on the first proposition by marking (X) beneath the appropriate word to the right.

Do you desire the City of Pensacola to change    Yes. No.
its present Commission Government Charter?    _____

Whichever way you vote on the first proposition indicate which new charter you prefer, if a change is voted, by marking (X) after the proposition of your choice below.

Do you desire the adoption of the "Proposed
Alternative Charter" for the City of Pensacola?    _____

Do you desire the adoption of the "Proposed

City Manager Charter'' for the City of Pensacola?

(b) If a majority of the votes cast at the said election be in favor of the City of Pensacola retaining its present Commission Government Charter, no further proceedings shall be had under this act. If a majority of the votes cast at the said election be against the City of Pensacola retaining its present Commission Government Charter, and a majority of the votes cast upon the second proposition submitted on the above ballot in favor of the adoption of the 'Proposed Alternative Charter' for the said City, proceedings shall be taken as provided in Section 4 hereof, which said section and those which follow are and constitute the said 'Proposed Alternative Charter'. If a majority of the votes cast at the said election be against the City of Pensacola retaining its present Commission Government Charter, but a majority of the votes cast upon the second proposition submitted on the above ballot be in favor of the adoption of the 'Proposed City Manager Charter', the following proceedings shall be taken, to-wit:

(c) The Clerk of the Circuit Court of Escambia County, Florida, shall call and cause to be conducted a special election, in accordance with the laws of the City of Pensacola, governing the election, within 45 days after the election hereinabove provided for, for the purpose of electing councilmen as provided in said Act, known as House Bill No. 197, which election shall be held on a Monday.

(d) Candidates for councilmen in such election to be held under said Act, shall be certified to by their political parties, or present their petitions as candidates to the said Clerk of the Circuit Court within the time and according to the laws of Florida, governing elections, in order to have their names printed on the official ballot. The compensation of the Clerk of the Circuit Court for holding such elections shall be the same as for holding the election before mentioned in this section, and the expense thereof shall be paid in like manner.

(e) The Councilmen certified by the Clerk of the Circuit Court as having been elected in said special election, shall qualify and enter upon their duties, at noon on the Monday succeeding the election and will con-

tinue to hold office until noon on the second Monday in June, 1933, A. D.

(f)   An election for councilmen shall be held on the first Monday in June 1933 A. D., and councilmen elected at such election shall qualify and enter upon the duties of councilmen at noon on the Monday of June succeeding such election. On the first Monday of June of every odd year thereafter an election for councilmen shall be held, and councilmen elected at such election shall qualify and enter upon their duties at noon on the Monday succeeding their election.

(g)   In the event of an injunction or other court proceeding preventing the holding of any or either of the elections herein provided for, within the period mentioned, such election or elections shall be held within the same period, dated from the termination of such litigation as would otherwise have intervened between the date this act becomes a law, and the date or dates provided."

Section 3 of Senate Bill amended section 103 of House Bill No. 197, as follows:

"This Act shall become effective immediately upon its passage and approval by the Governor, or upon becoming a law without such approval, for the purpose of calling and holding the election herein provided for, for the adoption of one, other or neither of the proposed charters submitted, but said City of Pensacola shall continue to operate under its existing charter and form of Government until the date when councilmen take office, under one of the now charters herein provided for, if such charter be adopted, but after such date, such charter so adopted shall be and become the charter of the City of Pensacola, and all provisions of law inconsistent therewith shall then and there stand repealed."

On July 21, 1931, an election was held under the provisions of the Acts above quoted (in part) and it is not contended that the provisions of these Acts were not strictly, except in respects hereinafter adverted to, complied with. At that election it was determined upon the face of the returns thereof that a majority of all the

voters voting in said election desired a change of the form of government of the said City of Pensacola; and that a majority of those desiring such change voted in favor of the proposed City Manager Charter as provided in House Bill No. 197. Thereafter, and within forty-five days, to-wit, on August 31, 1931, a subsequent election was held as provided for in House Bill No. 197 to elect Council for the City of Pensacola. The defendants in error were elected City Councilmen and on September 7, 1931, took the oath of office and assumed their duties respectively as councilmen of the City of Pensacola.

Information in the nature of Quo Warranto was filed in the name of the Attorney General to test the right of the respondents to hold such office. Demurrer was filed to the original information and sustained. The information was amended. Demurrer was filed thereto and sustained. An amendment to the amended information was filed and demurrer was interposed to the amended information as amended. This demurrer was likewise sustained. Thereupon the relator having announced in open court that he did not desire to plead further or to further amend his information as amended, final judgment was entered on the demurrer of the respondent in favor of the respondents against the relator and the several amended informations were dismissed, to which judgment relator took writ of error.

It is first contended that the election held on July 21, 1931, is void because the provisions of section 2 of Senate Bill No. 936 amending Section 100 of the Act designated as House Bill No. 197, reading as follows:

"Immediately upon the passage and approval of this Act the Registration Officer of the City of Pensacola shall open and keep open the registration books of the said City, for the registering of such voters, as are not already lawfully registered until ten days prior to the date of the election for the adoption of one, other or neither of the proposed charters for the said City herein

provided for, when said registration books shall close and remain closed until after such election. Any voter duly registered then or heretofore who may be exempt from the payment of poll tax, or who shall have paid such tax for the year 1930, ten days prior to such election shall be entitled to vote therein."

were not within the purview of the title of the Act; that that part of the title of the act reading as follows:

"An Act Providing for the Submission to the Qualified Electors of the City of Pensacola"

relates to qualified electors as provided in the Charter Act, Chapter 5533, Laws of 1905, which defines qualified electors of the City of Pensacola as follows:

"Any person who shall possess the qualifications requisite to an elector at general State elections and shall have resided in the City of Pensacola six months next preceding any municipal election held in said City and who shall have, not less than thirty days before said election, paid his capitation or poll taxes assessed for the two years preceding such election, if liable for such tax, and who shall have been registered in the municipal registration lists as provided in this Act, shall be a qualified elector of said City at all municipal elections."

The legislature prescribed the qualifications of voters in chapter 5533, supra, and it was within the province of the legislature to change that qualification and especially so when providing for a charter election to be held to determine what form of government would be adopted by the City of Pensacola. Certainly it could not be said that the above quoted provision from the body of the Act is not properly connected with the holding of a municipal election which is contemplated by the title of the Act. Especially is this true in the instant case when we observe that Senate Bill 936 was supplemental to and amendatory of House Bill 197. If we eliminate that part of the title to the Act which provides for the time at which the election is to be held we find that the title would read:

"An Act Providing for the Submission to the Qualified Electors of the City of Pensacola (at the designated

time) of an Alternative Charter Relating to and Affecting the Government of the City, Amending said Act above Entitled (meaning House Bill 197) to Provide for Such Submission and to Alter and Reorganize the Government of said City Under said Alternative Charter, if so Adopted.''

Section 100 of House Bill 197 read in part as follows:

''Immediately on the passage and approval of this Act the Registration Officer of the City of Pensacola shall open and keep open the registration books for registering voters until ten days prior to the date of the election for the ratification of this charter when the said registration books shall be closed and remain closed until after such election. Any registered voter, not exempt from the payment of poll tax, who shall have paid poll tax as due ten days prior to said ratification election shall be a qualified voter entitled to vote therein.''

So it is apparent that section 2 of Senate Bill 936 amended section 100 of House Bill 197 so as to allow an elector otherwise qualified to become eligible to vote in that election by paying poll tax for the year 1930, instead of requiring payment of the poll tax for two years. It is not contended that the provision in regard to qualification of electors in House Bill 197 was not within the purview of the title of that Act. Therefore, it cannot be contended that the provisions contained in Senate Bill 936 as to qualification of electors did not come well within that part of the title of the Act wherein it is declared to be ''amending said Act above entitled (referring to House bill 197) to provide for such submission''. Words included in parentheses ours.

So we must hold that the provision in the Act in regard to qualification of voters was well within the purview of the title and, therefore, that persons qualifying under the provisions of that Act were entitled to vote in the election of July 21, 1931, and the subsequent election on August 31, 1931.

The next objection challenges the validity of that part of

Section 100 of House Bill 197, section 2 of Senate Bill 936, wherein the Act defines certain duties to be performed by the Clerk of the Circuit Court of Escambia County. It is contended that these provisions of the Act violate section 20, Article III of the Constitution of Florida, it being contended that this Act is one regulating the jurisdiction and duties of the Clerk of the Circuit Court of Escambia County. The Act does not purport to regulate the jurisdiction or duties of the Clerk of the Circuit Court of Escambia County acting as a State or County official, but the Act designates the Clerk of the Circuit Court as a municipal officer to perform certain duties in connection with these elections. The Constitution contemplates that a county officer may perform the duties of a municipal officer. Attorney General vs. Connors, 27 Fla. 329, 9 Sou. 7.

In this case the Clerk of the Circuit Court is designated by the legislature to perform certain duties in connection with the municipal election. There is no difference between a legislative provision requiring these acts to be performed "by the Clerk of the Circuit Court" and a provision which would require that they be performed by Langley Bell who happens to be Clerk of the Circuit Court. The only difference is that by designating the Clerk of the Circuit Court to perform the duties required the legislature avoids the possibility of confusion which might arise in the event that a certain person by name was required to perform the duties and that person should happen to die or depart from the State or County.

In State ex rel. McMullen, et al. vs. Johnson as City Clerk of the City of Tampa, in an opinion filed at this term of the Court, a statute creating a Board of Elections for the City of Tampa and naming the persons who should constitute the Board as it should be first organized was held valid. In that case it was said:

"The Act in question here can hardly be said to be rea-

sonably subject to the criticism that it sets up a municipal principality or hierarchy, because notwithstanding this Act, all of the existing officials of the City of Tampa, as provided for by its Charter, remain elective by the people as heretofore. All that the Act does is to set up a special Election Board to carry out the prescribed elections in accordance with the law. Presumably the members of the Board act as non-partisan officials standing indifferent between contending political factions and opposing parties who may be concerned with the result of the expression of the popular will at the polls. The Constitution itself in a distinct section provides that 'The Legislature shall enact such laws as will preserve the purety of the ballot given under this Constitution' (Section 9 of Article VI). If the legislature has already provided by other provisions of law for municipal elections and it deems a special election Board to be necessary in a particular municipality to effectuate the general spirit thus expressed in the foregoing provision of the organic law, whether the policy of such legislation be sound or not, we must give it the benefit of the presumption that such was the legislative purpose which may reasonably be supposed to have actuated its enactment. Rast v. Van Deman & Lewis Co., 240 U. S. 342; 36 Sup. Ct. 370; 60 L. Ed. 679; L. R. A. 1917-A 421; Annotated Cases 1917-B 455.''

On the principles enunciated in that opinion we hold that the designation of the Clerk of the Circuit Court to perform certain functions and duties in connection with the election here under consideration did not offend against the organic law. See State vs. Dillon, 32 Fla. 545, 14 Sou. 383; State vs. Johnson, reported in 135 Sou. 817.

The next question presented challenged the validity of the call for the election, the form of the ballot and the fact that the City-Manager form of government, or the Charter proposed under House Bill 197 was adopted.

Each of the Charters proposed was a complete law within itself and under the provisions of the respective Acts the Charter would only become operative when a majority of those voting in an election had voted to change the form

of government and when such majority had thereupon voted to adopt the provisions of one or the other of such Charters. In other words, the legislature enacted two laws applicable to the City of Pensacola providing that one or the other should become operative only when a majority of the electors of the City should vote at an election provided for in the Act to be held for that purpose, to change the form of government and when a majority of that majority had placed its stamp of approval upon one or the other of the Charter Acts.

It appears to us that the election was called and the question stated and voted upon substantially as was provided for in the Acts, and that from the results of that election there could be no doubt that the Charter provided by House Bill 197 became effective upon the result of that election being determined and that thereafter the respondents were duly elected to their respective offices.

The judgment should be affirmed. It is so ordered.

Affirmed.

WHITFIELD, ELLIS, TERRELL, BROWN AND DAVIS, J.J., concur.