995 So.2d 1051 (2008)
CITIZENS FOR TERM LIMITS & ACCOUNTABILITY, INC., a Florida nonprofit corporation, Appellant/Cross-Appellee,
v.
Roy LYONS, Appellee/Cross-Appellant, and
Honorable Barbara A. Kirkman, as Supervisor of Elections for Clay County, Florida, Clay County, Florida, a public body corporate, and Diane Hutchings, Appellees.
No. 1D08-4525.
District Court of Appeal of Florida, First District.
November 14, 2008.
Rehearing Denied November 21, 2008.
*1052 Joseph W. Little, Gainesville, for Appellant/Cross-Appellee Citizens for Term Limits & Accountability, Inc.
C. Allen Watts of Cobb & Cole, DeLand, for Appellee/Cross-Appellant Roy Lyons; Ronald A. Labasky of Young, Van Assenderp, P.A., Tallahassee, for Appellee Barbara A. Kirkman.
No appearance for Appellees Clay County, Florida, and Diane Hutchings.
BENTON, J.
We have for review an amended final summary judgment that would effectively invalidate two proposals to amend Clay County's home rule charter, and that rejected a legal challenge that sought to preclude a vote on a third proposed amendment. We affirm in part and reverse in part.

I.
The County Commission of Clay County consists of five members, each elected from a single-member district. In the 2006 general election, however, the voters amended the Clay County charter to increase the number of commissioners to seven. The 2006 charter amendment provided that the two new commission seats were to be filled for the first time in 2008. By that time it turned out that a proposed amendmentone of the three at issue hereto undo the 2006 changes was itself on the ballot.[1] The 2006 charter amendment provided that both new commissioners were to be elected at large, one to a four-year term as Chair of the Commission, the other to an initial, two-year term (that was to be followed by four-year terms).

II.
The Citizens for Term Limits & Accountability Committee (Citizens Committee), appellant here, initiated the process which led to placing the proposed amendments at issue here on the November 4, 2008 general election ballot. Seeking to *1053 block three separate proposed amendments, Roy Lyons, a registered voter and taxpayer in Clay County, and an appellee here, filed for declaratory and injunctive relief in circuit court. That court granted declaratory judgment, and granted in part and denied in part the injunctive relief he sought. When the Citizens Committee appealed (after which Mr. Lyons cross-appealed), the circuit court entered a stay that kept the proposals on the November 4, 2008 ballot.

III.
One amendment before the voters of Clay County at the November 4, 2008 election was designed to undo the 2006 changes to the charter by restoring the Clay County Commission to five members, each from a single-member district. The ballot title and summary for this proposal read:
A. TITLE: Reduction of the number of Clay County Commissioners from seven (7) to five (5).
B. SUMMARY: Shall the Clay County Charter, Article II, Sections 2.2A(1) and (2), and Transitional Provisions (a), (b), (c) and (d), be amended to reduce the number of County Commissioners from seven (7) to five (5), there being one County Commissioner for each of the five County Commission Election Districts, with each County Commissioner to be elected only by vote of the electors in the County Commissioner's own District, and abolish the at-large elected positions.
The circuit court ruled that the ballot title and summary for this proposal were misleading, in part because they do not disclose when the measure would take effect, thus creating "considerable confusion" about the status of Commissioner-Elect Hutchings and the Commission Chair-Elect.
The second proposed amendment at issue was designed to reduce the salaries of county commissioners. The ballot title and summary read:
A. TITLE: Reduction of and changes to salaries of Clay County Commissioners.
B. SUMMARY: Shall the Clay County Charter, Article II, Section 2.2.C be amended to reduce the salaries of Clay County Commissioners to $37,000 per year and provide that any changes to such set salaries shall be approved by a majority of electors in a general election, for commissioners whose terms commence on or after the second Tuesday following the November 2008 general election.
The circuit court rejected the argument that this title and ballot summary were misleading, and ruled the proposed amendment should go to the voters.
The third proposed amendment at issue was designed to require a sixty per cent majority for approval of any future amendments to the Clay County charter. The ballot language and content of the measure read:
A. TITLE: Minimum requirement for voter approval of all charter amendments.
B. SUMMARY: Shall Article IV, Section 4.2(A)(4), Section 4.2.B(5), and Section 4.2.(C)(2) be amended to require at least sixty percent of electors in a general election to approve charter amendments or revisions proposed by citizens['] petition, the Charter Review Commission or the Board of County Commissioners.
The circuit court ruled that any such supermajority requirement contravened Article VIII, section 1(c) of the Florida Constitution, *1054 which provides that any county charter shall be "adopted, amended or repealed only upon a vote of the electors of the county."

IV.
The Citizens Committee appealed the circuit court rulings that, but for the stay, would have prevented voting on the proposal to shrink the size of the Clay County Commission and on the proposal to require at least sixty per cent of the voters to approve any amendment to the Clay County charter proposed at any future election. On cross-appeal, Mr. Lyons contends that the title and ballot summary for the amendment proposed to limit the county commissioners' salaries was misleading. We address the appeal, and then the cross-appeal.

A.
The Citizens Committee contends that the ballot title and summary pertaining to the "shrink the commission" proposal were not misleading, and that the trial court erred in ruling otherwise.[2] "The standard of review ... [on this question] is de novo." Fla. Dep't of State v. Slough, 992 So.2d 142, 147 (Fla.2008). Section 101.161(1), Florida Statutes (2008), requires a "ballot title" which "shall consist of a caption, not exceeding 15 words in length," along with a description of "the substance of the amendment ... [which] shall be an explanatory statement, not exceeding 75 words in length, of the chief purpose of the measure." These requirements are designed to
make certain that the "electorate is advised of the true meaning, and ramifications, of an amendment." The purpose of section 101.161(1) is "to provide fair notice of the content of the proposed amendment so that the voter will not be misled as to its purpose, and can cast an intelligent and informed ballot." Nevertheless, "the title and summary need not explain every detail or ramification of the proposed amendment."
In re Advisory Opinion to the Attorney Gen. re Local Trs., 819 So.2d 725, 731 (Fla.2002) (citations omitted). Section 101.161(1) also applies when amendments to the Florida Constitution are proposed. See, e.g., Advisory Opinion to the Attorney Gen. re Funding of Embryonic Stem Cell Research, 959 So.2d 195, 197 (Fla.2007). In this setting, our supreme court has described the limited judicial role the statute contemplates: "In order for a court to interfere with the right of the people to vote on a proposed ... amendment the record must show that the proposal is clearly and conclusively defective." Askew *1055 v. Firestone, 421 So.2d 151, 154 (Fla.1982) (citation omitted).
Section 101.161(1) outlaws "advantageous but misleading `wordsmithing' ... in the crafting of ballot titles and summaries" "in an attempt to persuade voters to vote in favor of the proposal." Slough, 992 So.2d at 149. But it "is not necessary to explain every ramification of a proposed amendment, only the chief purpose." Carroll v. Firestone, 497 So.2d 1204, 1206 (Fla.1986) (citing Miami Dolphins v. Metro. Dade County, 394 So.2d 981 (Fla. 1981)). "[A]n exhaustive explanation of the interpretation and future possible effects of the amendment [is] not required." Advisory Opinion to the Attorney Gen., re Amendment to Bar Gov't from Treating People Differently Based on Race in Pub. Educ., 778 So.2d 888, 899 (Fla.2000). See Askew, 421 So.2d at 155 ("[T]he voter should not be misled.... All that the Constitution requires or that the law compels or ought to compel is that the voter have notice of that which he must decide." (quoting Hill v. Milander, 72 So.2d 796, 798 (Fla.1954))).

1.
In concluding that ballot language concerning the "shrink the commission" proposal was misleading, the learned trial judge relied heavily on Kobrin v. Leahy, 528 So.2d 392 (Fla. 3d DCA 1988).[3] In Kobrin, the Third District found a ballot summary inadequate for failure to inform the electorate that candidates who were being electedin the same electionto the governing board of a fire-rescue district would not take office if the voters approved the proposed amendment, which "indubitably [would have] ha[d] the effect of eliminating the [governing board's] existence." 528 So.2d at 393. Here, in contrast, the statement explaining the proposal informs voters in no uncertain terms that the amendment to the charter would "abolish the at-large elected positions."
The Kobrin court did "not decide whether placing the two items on the same ballot would be ipso facto improper, regardless of the wording of the ballot proposition." 528 So.2d at 393 n. 3. Neither Kobrin, therefore, nor any other authority to which our attention has been drawn disapproves of presenting alternatives to the electorate on the same ballot. The attorney general has, indeed, opined:
... [T]he Board of County Commissioners of St. Johns County may place two or more propositions on the referendum ballot proposing a county home rule charter provided that each proposal is complete within itself and is stated separately and distinctly in such a form that the voters will have an opportunity to vote either for or against each separate proposal.
Op. Att'y Gen. Fla. 98-03 (1998). Long ago the supreme court expressly approved submission of alternatives concerning municipal charters to voters in the City of Pensacola. See State v. Armstrong, 103 Fla. 121, 137 So. 140, 146 (1931). See also Ennis v. Town of Lady Lake, 660 So.2d *1056 1174, 1175-76 (Fla. 5th DCA 1995). In the present case, a rational voter might well have voted to reduce the number of commission seats while voting for a particular candidate to fill an at-large seat in the event the "shrink the commission" proposal failed. See generally Advisory Opinion to the Governor, 192 So.2d 757, 759 (Fla. 1966) (ruling judicial candidate ineligible for office to which he had been elected where additional qualifications were imposed by an "amendment to Article V of the Constitution ... [that] was adopted by the people and became effective simultaneously with the election by the people of the Honorable Stephen R. Booher as Circuit Judge").

2.
The text of the proposal indicates the amendment is to take effect "immediately upon approval by the electors," but the ballot language does not include this detail. While inclusion would have underscored the imminence of the proposal's effect, if adopted, the cases do not require that ballot language contain proposals' effective dates. See, e.g., Advisory Opinion to the Attorney Gen. re Patients' Right to Know About Adverse Med. Incidents, 880 So.2d 617, 619 (Fla.2004); Advisory Opinion to the Attorney Gen. re Pub. Prot. from Repeated Med. Malpractice, 880 So.2d 667, 668 (Fla.2004); Advisory Opinion to the Attorney Gen. re Physician Shall Charge the Same Fee for the Same Health Care Serv. to Every Patient, 880 So.2d 659, 661 (Fla.2004). Although the ballot language describing the "shrink the commission" proposal does not specify dates, it is not misleading within the meaning of section 101.161(1), nor does it contain any "date-specific language" that calls for an impossibility. Cf. Elected County Mayor Political Comm., Inc. v. Shirk, 989 So.2d 1267, 1275 (Fla. 2d DCA 2008).[4]
*1057 Similarly, the ballot language might have informed the electorate that the proposed amendment would have the incidental effect of restoring to the county commission itself the right to select its chair. But the statutory requirement is not that every nuance and contingency be catalogued, only that "the ballot title and summary express the chief purpose of the proposed amendment in plain and unequivocal language." In re Advisory Opinion to the Attorney Gen. re Local Trs., 819 So.2d at 730. The ballot language concerning the proposal to "shrink the commission" meets this test. See Advisory Opinion to the Attorney Gen. re: Prohibiting Pub. Funding of Political Candidates' Campaigns, 693 So.2d 972 (Fla.1997).

3.
On the main appeal, the Citizens Committee also argues that the trial court erred in ruling that the proposal to amend the Clay County charter so as to require a vote of sixty per cent for any future amendment runs afoul of Article VIII, section 1(c) of the Florida Constitution. When Article VIII, section 1(c) of the Florida Constitution, provides that county charters shall be "adopted, amended or repealed only upon vote of the electors of the county," it must be read in pari materia with Article X, section 12(d) of the Florida Constitution, which defines the phrase "[v]ote of the electors." Appellant's contention that the word "only" in Article VIII, section 1(c) should be read to authorize a county charter to add other requirements to the constitutional requirement of a "vote of the electors" is unpersuasive.
Article X, section 12 of the Florida Constitution sets out certain "rules of construction" which, "[u]nless qualified in the text[,] ... shall apply to this constitution," including the following:
"Vote of the electors" means the vote of the majority of those voting on the matter in an election, general or special, in which those participating are limited to the electors of the governmental unit referred to in the text.
Art. X, § 12(d), Fla. Const. (1968). See generally State v. City of Miami Beach, 257 So.2d 25, 27-28 (Fla.1971); State v. City of St. Augustine, 235 So.2d 1, 3-6 (Fla.1970). The Florida Constitution specifies a simple majority vote as both necessary and sufficient to amend county charters.

B.
We find no fault with the straightforward manner in which the ballot language informs the voter of what is at stake in the salary proposal. On cross-appeal, Mr. Lyons argueshere, as he did belowthat the ballot summary for this proposal was misleading because it did not inform voters that, even if the proposal failed, the commissioners' salaries were slated to be reduced, albeit by a lesser amount, under amendments to the charter adopted in 2006. The initial brief on cross-appeal elaborates on this position:
The salary cap of $37,000 proposed in the Committee's [third proposed] amendment is roughly 57% of the statutory compensation which Commissioners would presently earn if Clay were a noncharter county. But the ballot summary fails to disclose that the 2006 amendments to Section 2.2 C of the Charter will already reduce the salary of Commissioners (other than the Chair) to 70 % of the statutory compensation, effective for terms commencing in 2008.
... The voters' choice here is not a choice between a zero reduction and a 43% reduction; it is a choice between a scheduled 30% reduction not yet effective and a 43% reduction.
The ballot language itself makes no mention of percentage reductions, simply presenting *1058 the absolute amount proposed as the commissioners' salary. The "wording of the ballot summary of [this] proposed [a]mendment ... is unambiguous and clearly states the amendment's chief purpose." Grose v. Firestone, 422 So.2d 303, 305 (Fla.1982). The circuit court's ruling upholding the adequacy of the ballot language describing this proposed amendment is fully in keeping with the requirements of section 101.161(1).

V.
In summary, we affirm the circuit court's rejection of the challenge to the proposal concerning reduction of county commissioners' salaries, and the trial court's ruling that a sixty per cent requirement for future amendments to the county charter would not comport with the Florida Constitution. But we reverse the trial court's ruling that ballot language pertaining to the "shrink the commission" proposal was deficient, and remand for entry of judgment giving effect to the voters' decision on the "shrink the commission" proposal.
Affirmed in part, reversed in part, and remanded.
VAN NORTWICK and HAWKES, JJ., concur.
NOTES
[1] The trial court found:

Prior to 2006, the Board of County Commissioners in Clay County was composed of five members from single-member districts. At the general election of 2006, the people approved a single proposal from the Charter Review Commission which amended Section 2.2 "Legislative Branch" by creating new Sections 2.2A(1) and (2), and 2.2C. Section 2.2A(1) and its transitional provisions provide that at the elections held in 2008, a Chair of Commission and one Commissioner shall be nominated and elected at large. Section 2.2A(2) provides for the duties of the County Chair.
[2] The trial court ruled:

The charter amendment proposed by the Committee is to take effect immediately upon approval by the electors of the County at the general election on November 4, 2008. At the primary election held August 26, 2008, Diane Hutchings received an absolute majority of votes among three candidates for the new Commissioner-at-Large seat in a universal primary held in accordance with Article VI, Section 5(b) of the Constitution. (Commissioner-Elect Hutchings, by consent of all parties, has been permitted to intervene in support of the Plaintiff.) The seat of the County Chair, for which there is one candidate on the ballot and one write-in-candidate, will be filled at the general election on November 4, 2008. Pursuant to § 100.041, Fla. Stat., commissioners are deemed "elected" on the date that the county canvassing board certifies the result of the election, and their terms of office commence on the second Tuesday following the election.
Lyons argues that the Committee's ballot title and summary are misleading because they omit any reference to the measure's abolition of the office and powers of the County Chair, and because they do not disclose that the measure is intended to take effect "immediately upon approval by the electors". The [trial] Court agrees.
[3] The trial court ruled:

This case is controlled by Kobrin v. Leahy, 528 So.2d 392 (Fla. 3d DCA 1988), rev. denied 523 So.2d 577 (Fla. 1988), cited with approval in Wadhams v. Board of County Commissioners of Sarasota County, 567 So.2d 414 at 417-18 (Fla. 1990). In Kobrin, the placement on the ballot of a proposition making the Board of County Commissioners the governing board of the fire and rescue service district, but making no mention of elimination of the existing governing board, was found to be misleading to voters and a violation of § 101.161, Fla. Stat., especially in light of the simultaneous election of persons to the existing governing board.
[4] We reject Mr. Lyons' contention that section 124.011(11), Florida Statutes (2008), is applicable here. The putative Chair of the Commission was elected at the 2008 general election. Appellee Diane Hutchings, who ran for the non-chair at-large seat with the two-year term, won a so-called "universal primary" in August of 2008, and was unopposed in the general election. Also at the 2008 general election, the voters approved all three amendments proposed to the Clay County's home rule charter at issue here.

The putative Chair-Elect of the Commission was thus elected "at the election which approve[d]" the revision to the charter designed to shrink the Clay County Commission. § 124.011(11), Fla. Stat. (2008). Similarly, Ms. Hutchings was "elected prior to or at the election which approve[d]" restoring the Clay County Commission to its historical, five-member size. Id. But the statute provides:
No county commissioner elected prior to or at the election which approves any revision as permitted in this section shall be affected in his or her term of office....
§ 124.011(11), Fla. Stat. (2008) (emphasis supplied). We have searched the record in vain for any basis for concluding that the proposed charter amendments at issue were intended as, or in fact are, a revision permitted by section 124.011(11), Florida Statutes (2008)rather than amendments proposed to the charter in conformity with charter amendatory procedures. Thus we find no basis in the record before us to conclude that section 124.011, Florida Statutes (2008), had anything to do with any amendment to the charter, either in 2006 or 2008.
We need not decide, therefore, whether, as appellant contends, section 124.011, Florida Statutes (2008), can apply only to noncharter counties. Compare Tallahassee Branch of NAACP v. Leon County, Fla., 827 F.2d 1436, 1444 (11th Cir.1987) (Godbold, J., dissenting) ("In 1985, § 124.011(1), Fla.Stat.1985 was enacted, the effect of which was to give non-charter counties the option of adopting an alternate method for electing county commissioners: a five-person board with all elected from single-member districts or a seven-person board with five elected from single-member districts and two elected at-large.") with Pinellas County v. Eight is Enough in Pinellas, 775 So.2d 317, 320 (Fla. 2d DCA 2000) (looking to definition of "term of office" in section 124.011(2) in construing county charter).