STATE v. OVERSEAS ROAD AND TOLL BRIDGE DISTRICT.

170 So. 109.
Opinion Filed October 16, 1936.

482

G. A. *Worley*, State Attorney, for Appellant;
H. H. *Taylor*, for Appellee.

TERRELL, J.—This appeal is from a final decree validating bonds in the sum of $3,600,000.00 issued by appellee, Over-

seas Road and Toll Bridge District, a political subdivision of the State of Florida, under authority of and for the purposes defined in Chapter 16598, Special Acts of 1933.

Overseas Road and Toll Bridge District was created by Chapter 16598, Special Acts of 1933. It is contended that the validating decree was erroneous because, (1) Chapter 16598, Special Acts of 1933, is violative of Section Sixteen of Article Three of the Constitution in that the title embraces more than one subject and that the subject matter thereof is not briefly expressed in the title, and (2) that in the enactment of Chapter 16598, Special Acts of 1933, Sections Seventeen, Twenty-one, and Twenty-eight of Article Three of the Constitution were not complied with.

Appellant does not attempt to point out in what manner or respect the title to said Chapter 16598 embraces more than one subject matter nor does it indicate in what respect the subject matter of the Act was not expressed in the title. The title is as follows:

"AN ACT Creating and Establishing a Special District in Monroe County, Florida, to Be Known as "Overseas Road and Toll Bridge District"; Defining the Territory Included Therein; Providing for Its Government and Administration and for the Appointment of a Board of Commissioners Therefor; Defining the Purposes and Powers of Said District; Defining the Powers, Duties, Privileges and Liabilities of the Board of Commissioners Thereof; Authorizing the Establishment of Rules and Regulations and Providing Penalties for the Violation Thereof; Authorizing the Establishment, Construction, Maintenance and Operation of Toll Bridges and Toll Highways Therein to Complete a Highway Extending from Miami to Key West Via Key Largo; Authorizing said District to Borrow Money and Issue Evidences of Indebtedness; Providing for the Re-

payment of Such Borrowed Moneys and the Interest Thereon Out of Tolls and Charges for the Use of Said Toll Bridges and Toll Highways; Providing for the Validating of Said Evidences of Indebtedness; Conferring the Right of Eminent Domain on Said District; Granting to Said District a Right-of-way Over any Lands, Waters or Submerged Lands Belonging to the State of Florida in Said District; Authorizing the Doing of All Other Acts and Things Necessary, Incident and Proper in Furtherance of the Purposes and Objects Aforesaid, Including the Levy of an Annual *Ad Valorem* Tax for the Maintenance, Repair and Operation of Said Toll Bridges and Toll Highways and Repealing All Laws or Parts of, Laws in Conflict Herewith."

A careful inspection does not disclose that the title so quoted is amenable to the assault made on it. True, it might have been more concisely expressed, but such is not a basis for constitutional assault and we cannot read into it but a single subject matter.

Section Seventeen of Article Three of the Constitution defines the manner in which bills shall be enacted by the Legislature and Section Twenty-eight of Article Three provides for the manner of their presentation to the Governor, their approval by him, and the method of their return to the Legislature and disposition in the event of his disapproval. The question of whether these provisions of the Constitution were violated in the enactment of Chapter 16598, Special Acts of 1933, turns on an inspection of the journals of the House and Senate. Such an inspection has been made and shows that the Act was passed, was submitted to the Governor, and was approved by him, in substantial compliance with the requirement of Sections Sev-

enteen and Twenty-eight of Article Three of the Constitution.

Section Twenty-one of Article Three as amended in 1928 provides that no local or special law shall be passed unless notice of the intention to apply therefor be published in the locality where the matter or things to be effected may be situated, which notice shall, state the substance of the contemplated law and shall be published at least thirty days prior to introduction in the Legislature. The evidence that such notice has been published shall be established in the Legislature before the bill is passed by having affidavit of proof of publication attached to the proposed bill when the same is introduced in each branch of the Legislature.

Inspection of the House and Senate Journals shows that the notice required by Section Twenty-one of Article Three was given and published as required and that all other requirements of the Constitution essential to the passage of the Act were complied with.

It is next contended that the election called and held to determine whether or not the bonds brought in question should be issued was not called and held in compliance with the requirements of Chapter 16598, Special Acts of 1933, and Chapter 14715, Acts of 1931.

Chapter 14715, Acts of 1931, provides the manner in which elections may be called and held for the approval of bond issues by counties, districts, and municipalities in compliance with Section Six of Article Nine of the Constitution as amended at the general election in November, A. D. 1930, to limit the right to contest such elections and to punish violations of the Act. It is imperative that elections of this kind be held in compliance with the Act, unless there is an equivalent alternative or supplementary statute applicable to the particular case. Chapter 16598, Special Acts

of 1933, created Overseas Road and Toll Bridge District and we have found in this opinion that it was regularly created.

An examination of the record discloses that the election brought in question was held in substantial compliance with Chapter 14715, Acts of 1931. The Board of Commissioners of the District adopted the required resolution providing for the election. The resolution determined the form of notice to be given calling the election, required its publication, gave notice of the law with reference to registration, noted the location of polling places, prescribed the form of ballot to be used, and named the inspectors and clerks. The notice of election and the notice of registration were published as required by law. The registration books were opened and opportunity was given to register as the law required. The notice respecting the payment of poll taxes was given. The polls were opened at eight A. M., on the day of the election and were kept open until sundown. Only qualified electors who were freeholders participated in the election. The supervisor of registration prepared a certified list of the qualified electors which was filed with the Board of Commissioners of the district and the Board of County Commissioners held a recessed meeting to canvass the returns of the election. The canvass showed that there were 1428 electors qualified to vote in the district, that 1362 voted in favor of issuing the bonds and eight voted against issuing them. A certificate of the result of the election was prepared by the County Commissioners and filed with the commissioners of the district. We find nothing material to the creation of the district and the calling and holding of the election for issuing the bonds that was not done in substantial compliance with the law. Appellant

does not attempt to point any specific instance in which the law was violated.

It is next contended that the location of the road and bridge construction from Lower Matecumbe Key to Big Pine Key via the Florida Keys as proposed by the Board of Commissioners of Overseas Road and Toll Bridge District for which the bonds in question were issued is not placed as authorized by Chapter 16598, Acts of 1933.

Paragraph "A" of Section Four, Chapter 16598, after stating the types of construction that may be provided and conferring general powers on the board, provides for or authorizes the construction "from Lower Matecumbe Key to No Name Key via such of the Florida Keys as the Board may determine, to connect said toll bridges and toll highways to State Road No. 4-A, and to do and perform such other acts * * * as said Board shall deem advantageous * * * " The purpose of the Act as expressed in Section 1 was to establish a toll highway which would connect with State Road No. 4-A in order to complete a system of highways and bridges extending from Miami to Key West via Key Largo.

To effectuate the purpose of the Act Section Thirty-seven authorized the Board to enter into any contract or make any arrangement with the Public Works Administration. Three maps were introduced showing and defining the course of the project and verbal evidence submitted by the engineer in charge of construction showed conclusively that the project was designed and was being executed to effectuate the purpose of the Act. We find no basis whatever to support this contention. The Act did not restrict the location to a prescribed course but vested discretion in the Board of Commissioners of the District which is not shown to have been abused.

The question is next raised as to whether or not Chapter 16598, Special Acts of 1933, authorizes the use of proceeds from the sale of the bonds for operation, maintenance, and debt service for one year after the project is completed.

Section Seven appears to be a complete answer to this question wherein it authorizes the sale of bonds "to pay interest on outstanding bonds during the period of construction of said toll bridges and toll highways and for a period of twelve months thereafter, and to pay the cost of maintenance, repairs, and operation of said toll bridges and toll highways during a period of twelve months last aforesaid."

It is next contended that the contingent and emergency storm funds provided in the resolution calling the bond election were not authorized by Chapter 16598, Special Acts of 1933.

Section nine of the Act authorizes the Board to fix rates of toll, such rates at all times to yield revenues equal to the annual operating, repair, and maintenance, redemption payments and interest charges and "such other and additional annual amounts as may be agreed upon in any contract with the purchasers of the bonds." Section thirty-seven of the Act authorizes the district to make any contract for the purpose of securing funds under the terms of the National Industrial Recovery Act for the purposes and uses of the district.

In addition to these sources of revenue Section thirty-five of the Act authorizes the levy of an ad valorem tax if in any year said sources of revenue should be insufficient to pay interest, maintenance, repairs, and operating expenses, said ad valorem tax to be large enough to make good any deficiency.

The district is also authorized under Section Five of the

Act to borrow money and to issue bonds therefor and to secure the payment of such bonds by a direct and exclusive first charge upon the tolls and other revenues received from the operation of the toll bridges and other property of the district. Section five in other words pledges all revenues from whatever source derived to the payment of the bonds and the interest thereon. It would be difficult to cast the terms of an Act in clearer words for the purpose of definitely allocating the contingent, emergency, and other funds to the purposes intended.

Could Section twenty-three or any other provision of Chapter 16598, Special Acts of 1933, be construed as imposing a liability on the State of Florida for bonds or other obligations issued thereunder.

Section twenty-three of Chapter 16598 gives and donates a right-of-way over any lands owned by the State to the district but it carries no implication or suggestion to make the State legally or morally liable for any obligation of the district and Section five in terms avers that the bonds shall not be an obligation of the state. Any provision to obligate the state for them would be invalid under Section Six of Article IX of the Constitution.

Neither would any property in Monroe County outside the boundaries of the district be liable for the payment of any tax for deficiencies in operation and maintenance nor could the bonds be construed as in any sense a debt of or obligation of Monroe County.

Other questions raised have been considered but we deem them to have been fully comprehended and answered in what has been said in this opinion.

The judgment below is accordingly affirmed.

Affirmed.

WHITFIELD, C. J., and ELLIS, BROWN, BUFORD, and DAVIS, J. J., concur.