Proceeding on petition of county of Dade and others for the validation of a bond issue opposed by the state of Florida. From a decree of validation, the state appeals.
Affirmed.
See also Fla. 39 So.2d 810.
The Board of County Commissioners of Dade County, Florida, on September 14, 1948, pursuant to Chapter 22960, Laws of Florida, Acts of 1945, and Chapter 23230, Special Laws of Florida, Acts of 1945, adopted Resolution No. 2957 authorizing the issuance, subject to approval at an election by the freeholders of Dade County, Florida, bonds in the sum of $1,200,000 for the purpose of financing the construction of bridges and acquiring land therefor, if required, the bridges to be situated within the territorial boundaries of Dade County, Florida, and are viz.:
(1) Bridge at Maynada Street across Mahi Canal, estimated to cost $73,400;
(2) Bridge at N.W. 103rd Street across Little River Canal, estimated to cost $35,100;
(3) Bridge on N.W. South River Drive at Palmer Lake, estimated to cost $59,900; *Page 808 
(4) Bridge across Miami Canal at N.W. 36th Street; estimated to cost $508,200; and
(5) Bridge between Miami Springs and Hialeah across Miami Canal, estimated to cost $523,400.
On September 28, 1948, the Board of County Commissioners adopted Resolution No. 2977, which provided for the holding of an election on November 2, 1948, for the purpose of submitting to the freeholder voters of Dade County, Florida, the question of the issuance of $1,200,000 of bonds. Notice of the election was duly published and an election held in accordance with the Resolution and applicable law, and each of the qualified electors of Dade County who were freeholders were given an opportunity of voting for or against the issuance of said bonds by casting a vote on the question: Shall the bonds of Dade County, Florida, in the aggregate principal of $1,200,000 be issued for the purpose of constructing the following bridges and acquiring lands therefor, if necessary? The bridges and cost of each are referred to herein under items (1), (2), (3), (4) and (5), supra.
The Board, on November 9, 1948, adopted Resolution No. 3014 canvassing the returns of the Special Bond election held on November 2, 1948, and declared that 105,311 qualified freeholders resided in Dade County on November 2, 1948. The Board certified that 32,503 voted for the issuance of bonds and 22,458 voted against the issuance of bonds. On December 21, 1948, the Board by Resolution No. 3075 provided for the issuance of bonds in the amount of $1,200,000. A petition for the validation of the bonds was filed in the Circuit Court of Dade County and notice or order to show cause was issued and published in Dade County, Florida, as required by law. An answer was filed by the State Attorney of said County in the name of the State of Florida. Testimony was taken before the Court on the issues made by the pleading and thereafter the cause was presented to the Court on final hearing — resulting in a decree validating the issue of $1,200,000 of Bridge bonds. The State of Florida appealed.
Appellant's first question is viz.: Did the submission at an election of a single proposition for the issuance of $1,200,000 bridge bonds for the purpose of constructing and acquiring land, if necessary, for five separate bridges violate the provisions of Section 6 of Article IX of the Constitution of Florida, F.S.A., where the proposition stated the estimated cost of each of the projects?
It is contended that the freeholders of Dade County in voting on propositions (1), (2), (3), and (4) and (5), supra, should have been given an opportunity to vote on each item separately, on the theory that each proposition is separate and distinct and the opinion and judgment of the voter should be registered for or against each item separately. It is established law that if there are two or more separate and distinct propositions to be voted on, each proposition should be stated separately and distinctly so that a voter may declare his opinion as to each matter separately, since several projects can be united in one submission to the voters so as to call for an affirmative or a negative vote upon all the projects. Elections, generally, are invalid where held under such restrictions as to prevent the voter from casting his individual and intelligent vote upon the object or objects sought to be obtained. See Antuono v. City of Tampa, 87 Fla. 82, 99 So. 324.
We find in the record sufficient testimony to establish the fact that the five bridges in question would serve the several sections of the county and all the inhabitants. One witness testified that the construction of the bridges was a part of a single comprehensive plan of bridge and road construction throughout Dade County, intended to serve the public interest and all of its people. The bridges tie into a general network or system of public roads traversing Dade County and accommodating the public and the people of the County. The Chancellor's finding was to the effect that the five bridges were for a single purpose and properly submitted to the voters as such. We find in the record ample testimony to support the Chancellor's finding and brings the contention of counsel squarely *Page 809 
within the holding of this Court in State v. City of Daytona Beach, Fla., 33 So.2d 218, and similar cases.
Appellant's second question is viz.: Does Chapter 22960, General Laws of Florida, 1945, which confers additional powers upon counties having a population of over 275,000 according to the last or any future official Federal or State Census, authorizing certain improvements and the issuance of bonds therefor, arbitrarily, unreasonably and improperly classify the counties of the State of Florida for the operation of said Chapter as a general law in violation of Section 21 of Article III of the Constitution of Florida?
Chapter 22960, supra, was enacted as a general law by the 1945 session and applies to counties in Florida having a population of 275,000, or more, according to the last census of Dade County. The caption of the Act is viz.: "An Act Conferring Additional Powers Upon Counties In the State of Florida Having a Population of Over 275,000 According to the Last or Any Future Official Federal or State Census; Authorizing and Empowering any such County to Construct, Improve, Extend, Enlarge, Reconstruct, Maintain, Equip, Repair and Operate Certain Public Projects; Providing for Paying the Whole or a Part of the Cost of a Project or Projects and of Extensions and Additions Thereto by the Issuance of either (1) General Obligation Bonds of such County Payable from Ad Valorem Taxes or From Ad Valorem Taxes and Revenues or (2) Revenue Bonds of such County Payable Solely From Revenues; Providing for the Levy of a Sufficient Ad Valorem Tax for the Payment of General Obligation Bonds; Providing for the Imposition and Collection of Rates, Fees, Rentals, Tolls and Other Charges for the Use of the Services and Facilities of Any such Project or Projects and for the Application of such Revenues; Granting to any such County Power to Acquire Necessary Real and Personal Property and to Exercise the Right of Eminent Domain: Granting the Consent of the State of Florida to the Use of All State Lands Lying Under Water Which Are Necessary for the Accomplishment of the Purposes of This Act; Authorizing the Issuance of Revenue Refunding Bonds; and Prescribing the Powers and Duties of Counties in Connection With the Foregoing and the Rights and Remedies of the Holders of Any Bonds Issued Pursuant to the Provisions of This Act."
Chapter 22960 was enacted as a general law. It is contended that the Act is not only unreasonable and arbitrary, but is an unconstitutional classification of counties of Florida by the Legislature in that Dade County having a population of 275,000, by the terms of the Act, is granted enumerated powers, advantages and privileges not possessed or enjoyed by other counties of Florida and therefore is violative of Section 21 of Article III of the Constitution of Florida. We admit that the terms of the Act grants Dade County powers not possessed by other counties of the State, although other counties are potentially within the designated classification. Dade County is one of the fast growing areas of the Nation and a majority of the freeholders of the county expressed a willingness to issue bonds to construct the five bridges of the county as links in a county-wide road system. It is not disputed that such a system of roads is indispensable to the growth, progress and future development of Dade County. It is our duty, consistent with established precedents and plain constitutional mandates, to construe the Constitution to meet the daily needs of our people, regardless of the Counties in which they may reside.
In State ex rel. Buford v. Daniel, 87 Fla. 270, 99 So. 804, we held that the Legislature had the power to enact general laws classifying counties on a population basis for governmental purposes. See City of Coral Gables v. Crandon, 157 Fla. 71, 25 So.2d 1; State of Florida v. Dade County, 157 Fla. 859, 27 So.2d 283. We fail to find merit in this contention.
Appellant's third question is viz.: Is Chapter 22960, General Laws of Florida, 1945, invalid under the provisions of Section 17 of Article III of the Constitution of Florida by reason of the fact that the Journal of the proceedings in the House of Representatives contains no entry that said *Page 810 
Act was signed by the presiding officer and the Clerk of the House of Representatives?
The answer filed by the defendant-appellant is in effect that the Journal of the proceedings of the House of Representatives contain no entry that the said Chapter 22960, supra, was signed by the presiding officer and Clerk of the House of Representatives as required by Section 17 of Article III of the Constitution of Florida and that said Chapter is therefore null and void and of no effect. The decree challenged on this appeal makes a finding on the point and sets forth that Chapter 22960, supra, was duly signed by the Speaker and Chief Clerk of the House of Representatives. We find in the transcript sufficient evidence to sustain this finding.
Appellant's fourth question is viz.: Does Chapter 23062, General Laws of Florida, 1945, which provides that bond elections may be ordered to be held on the same day as any regular or special municipal, state or national election in counties having a population of more than 210,000 according to the last preceding Federal Census, arbitrarily, unreasonably and improperly classify the counties of the State of Florida for the operation of said Chapter as a general law in violation of Section 21 of Article III of the Constitution of Florida?
Chapter 23062, supra, was passed as a general law in 1945 and the terms thereof made applicable to the counties of Florida having a population of more than 210,000, according to the last preceding (1940) Federal Census. It authorized the holding of bond elections on the same date of any regular or special, municipal, state or national election held in the State of Florida, but in conducting bond elections when other elections were being held, it was necessary to provide for (1) separate ballot boxes; (2) separate ballots; (3) separate returns; (4) separate canvassing; and (5) provided for the use of voting machines under certain circumstances. Duval and Dade Counties were in the population brackets when the Act was passed and other counties of Florida are potentially within these brackets.
Chapter 22545, Acts of 1945, F.S.A. § 103.21, was a law and in effect at the time Chapter 23062, Acts of 1945, supra, became a law. Under the provisions of Chapter 22545, supra, bond elections could not be held in the State of Florida on a day when any state, county or municipal primary or general elections were being held and the Legislature, having full knowledge of this situation, desired to make exceptions to the provisions of Chapter 22545 and enacted Chapter 23062. Chapter 23062 provides that counties of Florida having a population of 210,000, or more, according to the last Federal (1940) Census could hold bond elections on the same day that state, county or municipal primaries or general elections were held, but required separate ballots, separate ballot boxes, separate returns and separate canvassing by the managers or the bond election officials. The Legislature had the power to classify the counties as was done by the two Acts and it cannot be said that its action was unreasonable or arbitrary. See City of Coral Gables v. Crandon,157 Fla. 71, 25 So.2d 1; State of Florida v. Dade County,157 Fla. 859, 27 So.2d 283.
We fail to find error in the record.
Affirmed.
ADAMS, C.J., and TERRELL, THOMAS, SEBRING and HOBSON, JJ., concur.
BARNS, J., not participating.