SEBRING, Justice.
On September 8, 1953, the Attorney General, in the name and by the authority of the State of Florida, instituted a quo warranto proceeding to try the right and title of one K. M. Mellick to have and exercise the franchises and powers appertaining to the office of chief of police of the City of Lake Wales, Florida, and to establish the claim of one J. V. Cooper to the office.
As we understand the record, the mayor of Lake Wales, on June 19, 1951, appointed the said J. V. Cooper as chief of police of the City of Lake Wales, and on July 3, 1951, the city council of the municipality *825 approved the appointment “on a month-to-month basis.” At the time of this appointment and approval the controlling city charter provision provided: “There shall be a City Marshal, and he shall be appointed by the Mayor and confirmed by the City Council at its first regular meeting in July of each year, and shall hold office for the term of one year and until his successor shall be appointed and qualified * * *.” Section 1, Article 3, Chapter 8997, Laws of Florida, Special Acts 1921, as amended by chapter 10817, Laws of Florida, Special Acts 1925. (Emphasis supplied.)
After this appointment, but prior to June 17, 1952, the City of Lake Wales enacted an ordinance which provided: “It shall be the duty of each Mayor elected at any general election, as soon as he qualifies as such, to appoint some suitable person, qualified to hold office in the City, to the office of Chief of Police, such appointment to be confirmed by the City Council, and such person so appointed and confirmed as aforesaid shall hold such office during the [two-year] term of the Mayor so appointing him, and until his successor shall be duly appointed, confirmed and qualified; provided he shall not sooner be removed or suspended under the provisions of the Ordinances of the City.” Section 1.02, Code, City of Lake Wales-. (Emphasis supplied.)
On June 17, 1952, the said J. V, Cooper was appointed and confirmed by the then mayor and city council of Lake Wales to serve “as Chief of Police from month to month.” Thereafter, on March 14, 1953, the mayor of the City of, Lake Wales reduced Cooper in grade from Chief of Police to patrolman and appointed the respondent Mellick as “Acting Chief of Police”; and on March 17, 1953, the city council approved the action.
Subsequently the legislature of the State of Florida enacted chapter 29224, Special Acts of 1953, which was an act purporting to establish a commission form of government for the City of Lake Wales, Florida. Section 88 of the act provided that the' act should not become effective unless, and until, it was ratified by a majority of the q'ual-ified electors of the City of Lake Wales in the regular municipal election to be held on May 5, 1953, and required the governing body of the city to cause the question of whether or not said act should become effective to be placed upon the regular municipal election ballot, and further provided that notice of the said question being so placed upon the regular or municipal election ballot should be published one time five days prior to the said election.
On May 5, 1953, the question of the adoption or rejection of the special act was submitted to the qualified electorate of the city, at the regular municipal election, and was approved- by a majority of the electors. Thereafter, on July 17, 1953, the city manager of the municipality appointed the said Mellick “to the position as chief of police of the City of Lake Wales.” This appointment was made pursuant to the following piro-visions of Chapter 29224:
“Section 25. Powers and Duties [of City Manager.]
* * * * * *
B. Except as hereinafter, specifically provided, to appoint and remove all subordinate .officers and employees of the city; all appointments to- be made upon merit and fitness alone.”
“Section ,34. Police Force. The police force of the City of Lake Wales shall consist of a chief of police and as many subordinate officers, policemen and employees as the city commission shall determine. The police force shall be under the supervision of the city manager, subject only to ■such .rules and regulations as the city commission may prescribe by ordinance, resolution or direction.”
“Section 35. Chief of Police. The chief of police shall perform the duties and have the authority directed and .authorized by ordinances and .resolutions of the city commission.”
The next-, day after his appointment, Mellick filed his official bond in amount and form fixed by the city commission. Simultaneously, he executed and .filed an oath *826 which read: “I, K. M. Mellick, a citizen of the State of Florida and of the United States of America, and being employed by or an officer of the City of Lake Wales, Florida, and a recipient of public funds as such employee or officer, do hereby solemnly swear or affirm that I will support the Constitution of the United States and of the State of Florida; that I am not-a member of the Communist Party; that I have not and will not lend my aid, support, advise, [sic] counsel or influence to the Communist Party; that I do not believe in the overthrow of the Government of the United States or of the State of Florida by force or violence; that I am not a member of any organization or party which believes in or teaches, directly or indirectly, the overthrow of the Government of the United States or of Florida by force or violence.”
This oath was executed in attempted compliance with Section 69 of Chapter 29224, which provides:
"Section 69. Oath of Office. Every officer of the city shall, before entering upon the duties of his office, take and subscribe to an oath or affirmation to be filed and kept in the office of the city clerk; which oath shall be in the form prescribed for state officers by the constitution and general laws of the State of Florida.”
The dominant question in this proceeding is whether upon the facts we have recited the relator is entitled to the relief prayed.
It is plain from the record that when' Cooper became “chief of police” on July 3, 1951, the charter act of the City of Lake Wales made no provision for such an officer but provided only for a city marshal to serve for a one-year term. See section 1, Article 3, ch. 8997, Laws of -Florida, Special Acts 1921. The subsequently enacted ordinance of the city attempting to create the office of chief of police and to extend the term of the office to two years was ultra vires, illegal and void for want of charter power in the city to create such an office or to enlarge the term thereof. Attorney General ex rel. Wilkins v. Connors, 27 Fla. 329, 9 So. 7. Therefore, without regard to the question whether the “chief of police” appointed by the city in 1951 could have lawfully exercised the powers and duties appertaining to the office of town marshal, it is clear that any term to which the “chief of police” might have been appointed could not have been for more than a one-year period.
Some contention is made by the relator that because chapter 17577, Special Acts 1935, makes reference to the office of “chief of police,” in dealing with the creation of a municipal court system in the City of Lake Wales, the legislature has thereby created such an office. This contention is not tenable, as a mere reading of the special act will disclose.
When J. V. Cooper was appointed “Chief of Police from month to month” on June 17, 1952, the appointment was necessarily made under the only valid legislation then in existence pertaining to' the City of Lake Wales; namely, the charter act, chapter 8997, Laws of Florida, Special Acts 1921, which at all events limited the term of any appointee to the office to “the term of one year and until his successor shall be appointed and qualified.” Art. 3, sec. 1, ch. 8997, Special Acts 1921. Therefore, without consideration of the question whether an officer appointed “from month to month” is entitled to hold office for the full period of the term prescribed by the law under which he is appointed, it is manifest that the term of office of the said Cooper could not have extended beyond a one-year period and until a successor had been appointed and had qualified.
Chapter 29224, Special Acts 1953, became effective on May 5, 1953.' Although no notice of intention to apply for its passage was published prior to its introduction in the legislature, it did contain within its body the express required provision that it ■should not become operative or effective until ratified or approved at a referendum election to be called and held in the territory affected in accordance with a provision therefor contained in such bill. See section 21, Article III, Constitution of Flor *827 ida, F.S.A. The fact that the date specified in the act coincided with the date of the general municipal election in the City of Lake Wales did not invalidate the act. See City of Miami Beach v. Crandon, 160 Fla. 439, 35 So.2d 285; State v. Dade County, Fla., 39 So.2d 807.
Though Chapter 29224 contained the provision that “ * * * all existing ordinances of the municipality, not in conflict with the provisions of this act, shall continue in effect and unimpaired until repealed, amended or modified by the municipality which is hereby created,” this provision did not have the effect of carrying forward into the new law the invalid ordinance under which Cooper was appointed “chief of police” on June 17, 1952. Section 1.02, Code, City of Lake Wales. This is so for the reason that “an invalid or illegal ordinance is wholly inoperative. It is not made valid by an [enactment] continuing in force all existing ordinances until repealed or changed.” McQuillin on Municipal Corporations, 3rd Ed., sec. 20.01.
After Chapter 29224 had been approved by a majority of the electors at an election duly held on the date specified in the act, the city manager, on July 17, 1953, appointed Mellick “to the position as chief of police of the City of Lake Wales.” He had the power to make such an appointment under sections 25 B, 34 and 35 of the act. Thereafter, Mellick filed his official bond and executed his oath of office — -and while the oath of office was not in the exact language required by section 69 of the act we think it was sufficiently broad to invest Mellick with the powers of the office of chief of police and to bring to an end any right Cooper had to continue in the office beyond his one-year term because of the fact that his successor had not been duly appointed and qualified.
The present proceeding was instituted after Mellick had been appointed chief of police pursuant to the provisions of Chapter 29224. Therefore, at the time of the institution of the proceeding Cooper had no rightful claim to the office.
It follows from the conclusions reached that the proceeding should be dismissed.
It is so ordered.
ROBERTS, €. J., and TERRELL and MATHEWS, JJ., concur.