PER CURIAM.
This is an appeal from a final decree of the Circuit Court in and for Dade County, Florida, validating general obligation bonds in the amount of $46,000,000, proposed to be issued by Dade County, Florida.
Prior to the referendum election approving the issue, the Board of County Commissioners of Dade County adopted a resolution requiring a reregistration of qualified electors who were also freeholders, pursuant to Section 97.081, Florida Statutes, F.S.A., and in due course 85,974 freeholders reregistered. At the ensuing election, 47,075 freeholders who had not reregistered qualified by signing affidavits in compliance with Section 100.241(2) (d), Florida Statutes, F.S.A. Freeholders’ votes in the sum of 105,112 were cast, 65,531 for and 39,581 against the issuance of the bonds. If, therefore, the number of freeholders entitled to vote is determined to be the number who reregistered together with those who qualified at the polls, a total of 133,049, then it is clear that a majority of the votes cast approved the issuance of the bonds.
The questions raised by appellants in this Court relate, basically, to the constitutionality and applicability of the statutory authorization for the election, and the propriety of the election procedures used by the appellee county under the statutes.
Appellants contend that a majority of the qualified electors who were also freeholders in Dade County did not vote inasmuch as the regular registration books showed 264,-559 registered freeholders and only 105,-112 freeholders’ votes were cast in the election. The court below, computing qualified electors as first above indicated, found that the 105,112 freeholders’ votes cast constituted a majority of the 133,049 qualified to participate. This issue involves a supposed conflict between Section 97.081(3) and Section 100.241(2) (a), infra. The further contention is that Section 97.081 is not applicable to bond elections for the purposes enumerated in Chapter 130, Florida Statutes, F.S.A.
The appellants attack the validity of Section 100.241(2) (d), which allows a freeholder to qualify by affidavit at the polls, on the ground that it violates Section 27, Article III of the Florida Constitution, F.S.A., by conferring powers upon inspectors who are not county officers or deputies of county officers.
Other arguments are that the construction of the contemplated highway system is a state and federal project rather than a proper county project and therefore violates the provisions of Section 5, Article IX, Florida Constitution; that the* controverted bond issue has nine separate and distinct purposes which must be separately passed upon; that the conceded practice of requiring an affidavit from all electors who had failed to reregister as freeholders, but desired to vote on the bond issue on election day, denied to such freeholders their statutory right to qualify as provided in Section 100.241(2) (d) by presenting a tax receipt, deed or copy of deed; and that the election was irregularly conducted in that numerous illegal votes were cast by electors not properly qualified under the law.
Several statutory provisions are involved in this controversy. The chapter governing county bonds generally provides, Section 130.03, Florida Statutes, F.S.A., that bond issues must be approved in “an election in which a majority of the freeholders, who are qualified electors residing in such county, shall participate * * * in the manner prescribed by §§ 100.201-100.351. * * * ” The latter chapter, covering “General, Primary, Special, Bond And *835 Referendum Elections,” provides that in freeholder elections “the regular registration hooks of the county shall be used * * Section 100.241(2) (a), Florida Statutes, F.S.A. Section 100.241(2) (d) is to the effect that any registered elector “who is not shown as a freeholder” may nevertheless vote in freeholder elections if he “presents to the inspectors a tax receipt * * * or a deed * * * or makes a sworn affidavit of ownership * *
The reregistration procedure invoked in this case is authorized by Section 97.081, Florida Statutes, F.S.A., a part of the chapter relating to qualification and registration of electors:
“97.081 Registration of freeholder * * * (2) (a) The county commissioners of any county or the governing authority of any municipality may at any time call for a reregistration of freeholder electors for the purpose of securing a new and up-to-date list of freeholders to be used for qualifying freeholder electors to participate in any election called for the purpose of approving the issuance of bonds of such county or municipality, respectively, or for the purpose of approving an act with reference thereto. The reregistration of freeholder electors of a municipality may be called for under the provisions of this section, for the purposes herein stated, whether the proceedings requiring such freeholders election are under the authority of the charter of the municipality or under the authority of the general laws * * *. (3) The latest record of reregistered qualified freeholders shall supersede prior records and in any bond election held after a re-registration of freeholders the power to issue bonds shall be based upon the approval by a majority of the votes cast in an election in which a majority of the reregistered freeholders who reregister and are qualified shall participate.”
The constitutionality vel non of the last-cited statute, Section 97.081, has been determined adversely to appellants in the cases of State v. County of Sarasota, Fla.1953, 62 So.2d 708, and State v. Board of Public Instruction, Fla.1959, 113 So.2d 368. Also settled by those decisions, contrary to appellants’ contentions, is the alleged conflict between Sections 100.241(2) (a) and 97.081, the reference to the use of “regular registration books” in the first-cited provision being construed broadly to include reregistration lists. These decisions we deem to be controlling in this litigation.
The court in the instant case found, and the record supports the finding, that the citizens of Dade County had reasonable opportunity to register in accordance with the resolution invoking the statutory procedure. The contention that Section 97.081, Florida Statutes, F.S.A., if constitutional, is not applicable is also without merit. The charge of inapplicability is based on the fact that highways are specifically mentioned in Section 130.01, Florida Statutes, F.S.A., and that Section 130.03 did not include the use of Section 97.081 when it designated the statutory procedure to be used. The precise wording of the statute, Section 97.081, gives the county commissioner authority to call for a reregistration of freeholders at any time to participate in any election, and it was held in State v. Overseas Road & Toll Bridge District, 125 Fla. 481, 170 So. 109, 110, that Chapter 130, Florida Statutes, F.S.A., contemplates the use of related statutes: “Chapter 14715, Acts 1931 [now Section 130.03, Florida Statutes, F.S.A.], provides the manner in which elections may be called and held for the approval of bond issues by counties, districts, and municipalities in compliance with section 6 of article 9 of the Constitution * * * It is imperative that elections of this kind be held in compliance with this act, unless there is an equivalent alternative or supplementary statute applicable to the particular case.” (Emphasis supplied.) Section 97.081 is. *836 we believe, applicable and supplementary to Section 100.241(2), and upon the reasoning applied in prior decisions the reregister-ed list in fact becomes a part of the “regular registration” books. Where these statutes operate in conjunction, the provision in Section 100.241(2) (d) for qualification' at the polls by any registered elector “not shown as a freeholder” would clearly permit qualification by registered electors not shown on the current reregistration list without regard to the presence or absence of their names on the superseded freeholders’ registration list. The inclusion of these voters in computing total eligible freeholder electors can no more logically be considered an abandonment of the reregistration list in this case than would qualification at the polls, in the absence of reregistration, constitute an abandonment of the regular freeholders’ registration list for purposes of computing the proportion of eligible electors participating in an election.
Other questions raised present no substantial ground for disturbing the decree. One obj ection is to the function of election inspectors under Section 100.241 (2) (d) as violative of Section 27, Article III, Florida Constitution. The duties performed by them, however, are not those of registration but reception of specified documentary evidence of ownership by persons already registered as electors. The record evidence is that the accuracy and authenticity of these qualifications were fully reviewed by registration officers. With reference to the issue of multiple purposes above referred to, the lower court held, and we concur, as follows: “The construction of the portions of the system of hard surfaced highways and bridges and the acquisition of rights of way to he financed with the proceeds of said $46,000,000 Highway Bonds constituted a single project serving the interests of and being of benefit to the county and all of its inhabitants.” The system of highways and bridges proposed by the appellees falls within the rule “that if bonds are proposed and issued for two or more purposes that are so related as to amount to a single purpose, they may be voted on as a single issue.” State v. City of Daytona Beach, 1948, 160 Fla. 13, 33 So.2d 218, 219; State v. Dade County, Fla.1947, 39 So.2d 807.
The contention that the proposed system of highways and bridges serves a state and federal purpose rather than a county purpose is controlled by the decision in Bedenbaugh v. Adams, Fla.1956, 88 So.2d 765, 768, where it was held that “a state agency may serve a local purpose as well as a state purpose and that under such circumstances to the extent that the county purpose is served, a county may expend county funds to supplement the expenditure of state funds in accomplishing the county purpose which in the particular case happens to be part and parcel of the state purpose.”
The requirement of an affidavit without regard for alternative provisos of the statute, Section 100.241(2) (d), presents a more subtle issue. There was, without doubt, a failure in this respect to follow the precise terms of the law, which clearly permits qualification by any of the three methods specified, in the alternative, and would not require, as election inspectors were in this case instructed, that presentation of documentary evidence be bolstered by sworn affidavits. We conclude, however, upon consideration of the record facts, that the error in this instance is not fatal. While a variation of statutory prescriptions cannot be justified on grounds of mere administrative expediency, the procedure followed in this case in fact required from an elector, qualifying at the polls, nothing more, in substance, than would have been inherent in the act of presenting the specified documentary evidence alone. The court found that the procedure was not questioned and the record reflects no evidence of complaint from any of the 47,075 voters who signed affidavits.
*837 In summary, no irregularity shown by record evidence could have affected the result in the election here contested. Under the established rule in this jurisdiction the error noted was ineffectual to vitiate the judgment. See Pickett v. Russell, 42 Fla. 116, 28 So. 764; State ex rel. Clark v. Klingensmith, 121 Fla. 297, 163 So. 704.
The decree of validation is
Affirmed.
THOMAS, C. J., and ROBERTS, DREW, THORNAL and O’CONNELL, JJ-, concur.