VAL M. ANTUONO, *Appellant,* v. THE CITY OF TAMPA, A MUNICIPAL CORPORATION, PERRY G. WALL, W. J. BARRITT, WILLIAM A. ADAMS, S. L. LOWRY and JAMES McCANTS, CITY COMMISSIONERS, Appellees.

1. Where an appeal has been duly taken from an order denying an injunction, and an application is made to the Supreme Court for an injunctional order, in aid of its appellate jurisdiction pending the appeal, predicated upon the organic power of the Supreme Court to issue "all writs necessary or proper to the complete exercise of its jurisdiction," and the questions presented are of law only, and the cause has been by consent fully argued on its merits, the court may in the interest of the public good, determine the merits of the appeal without passing upon the application for a preliminary injunction.

2. A statute does not contemplate an unreasonable exercise of authority conferred by it, particularly when the taxing power and material property rights are involved.

Antuono v. City of Tampa et al.—Syllabus.

3. Action taken by municipal officers must be both legal and reasonable. This is particularly so under general grants of power.

4. In submitting to the electors for their approval or rejection several questions as to the issue of bonds for public purposes, *if there are two or more separate and distinct propositions* to be voted on, each proposition should be stated separately and distinctly so that a voter may declare his opinion as to each matter separately, since several propositions cannot be united in one submission to the voters so as to call for one assenting or dissenting vote upon all the propositions; and elections are invalid where held under such restrictions as to prevent the voter from casting his individual intelligent vote upon the object or objects sought to be obtained. *The object of the rule* preventing the submission of several and distinct propositions to the people united as one in such a manner as to compel the voter to reject or accept all is to prevent the joining of one local subject to others in such a way that each shall gather votes for all, and thus one measure, by its popularity or its apparent necessity, carries other measures not so popular or necessary and which the people, if granted the opportunity of separate ballots, might defeat. However, unless otherwise provided, it is proper to submit a number of propositions or questions at one time, providing the ordinance specifies each separate question or proposition as such, and provision is made by which the voters are given opportunity to vote upon each specific proposition or question independent of the other questions submitted at the same time. This may be done upon a single ballot, but the ballot must state each proposition separately, so that the voter may be able to express his will with reference to each question."

5. The rule above stated is amply sustained by reason and authority; it accords with the principles of fair dealing required of all officials in the exercise of public functions, powers or duties; and it is not in conflict with, but conforms to the views expressed and the decisions made on the facts presented in the cases of Potter v. Lainhart, 44 Fla. 647, 33 South. Rep. 215; Perry v. Town of Panama City, 67 Fla. 285, 65 South. Rep. 6; Merrell v. City of St. Petersburg, 74 Fla. 194, 76 South. Rep. 799.

6. Where 'one proposition containing seven separate, distinct and unrelated objects for large bond issues is to be submitted to the electors to be voted for or against as a single question, which considered with the pleadings in the case, clearly shows an illegal act by the submitting officers with reference to the election, such illegal act may be enjoined.

Reversed.

*Knight, Thompson & Turner* and *James F. Glen*, for Appellant;

*H. S. Hampton* and *Mabry, Reaves & Carlton*, for Appellees.

WHITFIELD, J.—A suit in equity was brought by Antuono in which it is prayed that the city officials be temporarily enjoined and restrained "from submitting to the electors of the city of Tampa, qualified to vote at an election for that purpose, the various projects set forth in the said ordinance No. 129-A, in the manner in which the same are proposed to be submitted in the said ordinance, or in any manner preventing the qualified electors from expressing a free and fair choice on the proposition of issuing bonds of the city of Tampa, and further enjoining and restraining the defendants and each of them from expending any moneys of the city of Tampa for the purpose of holding an election in the manner proposed, or otherwise than in accordance with law, and that upon final hearing of this cause the said injunction be made perpetual." Defendants answered.

The ordinance referred to is as follows:

"An ordinance Calling an Election to Vote Upon the Issuing of Bonds of the City of Tampa.

"Be it ordained by the City Commission of the City of Tampa:

"Section 1: That a special election of the qualified electors who are tax payers of the City of Tampa, who paid taxes on their own property in said city, assessed and levied for the calendar year 1923, and who are also free holders therein, is hereby called to be held on the 12th day of February, A. D. 1924, at which election the following questions concerning the issuance of bonds of the City of Tampa for the payment of all or a portion of the costs of the following improvements respectively shall be submitted:

"1. Shall $75,000 bonds be issued for the acquisition and improvements of property for public wharves and sheds?

"2. Shall $125,000 bonds be issued for the improvement of public parks and the acquisition and improvement of additional lands for public park purposes?

"3. Shall $215,000 bonds be issued for an addition to the city hospital and $35,000 bonds be issued for a hospital or addition for the negro race and a site therefor, if necessary?

"4. Shall $250,000 bonds be issued to construct and equip an auditorium for public gatherings?

"5. Shall the following bonds be issued:

"$750,000 for extension and repair of the existing sewage system and for storm sewers and drains.

"$111,000 for opening, widening and improving Lafayette street from the eastern terminus thereof to the Seaboard Air Line tracks, and constructing a viaduct at said tracks.

"$100,000 for the improvement of the fire alarm system and for new fire stations, sites and equipment.

"$30,000 for an incinerator of garbage and a site therefor.

"$100,000 for extending water mains.

"$325,000 for constructing a bridge at Cass street, and $325,000 for constructing a bridge at or near Carew street.

"$250,000 to extend existing sea wall along the bay and river front from Magnolia avenue east to Platt street, also from Rome avenue southwardly to the present city limits and construct and improve a roadway and parkway along the sea wall as so extended; subject, as to said $250,000 bonds to the receipt of *bona fide* subscriptions of property owners agreeing to pay as much as one-third of the cost of said sea wall as estimated by the city engineer, the cost of said roadway and parkway to be apportioned as may be provided by law.

"6. Shall $250,000 bonds be issued for the construction of a bridge at Fortune street?

"Section 2. That ballots shall be prepared for said election stating the substance of each of said six numbered propositions in the affirmative and the negative, with squares before each affirmative and negative, and with directions to the voters to place a cross mark (X) in the square before either the affirmative or the negative of each proposition to indicate that he favors such proposition or is opposed to the same.

"Section 3. Bonds shall not be issued for any purpose unless a majority of the votes cast at said election be in favor of the proposition embracing such bonds.

"Section 4. That this ordinance shall be sufficient direction to all officers upon whom duties concerning election are imposed by the charter, laws or ordinances, to perform such duties.

"Passed by the City Commission of the City of Tampa this 18th day of December, A. D. 1923.

"CHAS. H. BROWN,

"Mayor-City Commissioner.

"Attest:

"Wm. E. Duncan,

"City Clerk."

From the following order an appeal was taken returnable to February 29, 1924: "The foregoing cause coming on this day to be heard upon application of complainant for a temporary injunction as prayed for in the bill of complaint, and the court having heard the argument of the respective counsel and the same having been argued by counsel for the respective parties and duly considered by the court, it is ordered that said application for temporary injunction be and the same is hereby denied, upon authority of Potter v. Lainhart, 44 Fla. 6657; Perry v. Panama City, 67 Fla. 285, and Merrell v. City of St. Petersburg, 74 Fla. 194."

Predicated upon the appeal duly entered to this court a motion is made in this court as follows:

"Now comes Val M. Antuono, the appellant in the above stated cause, and hereby represents to the Court that he has filed a transcript of the record in this cause on an appeal from an order denying a temporary injunction as prayed for in his bill of complaint filed in this cause, and that in order to secure a review of the said order by this Honorable Court it is essential that a temporary injunction should be awarded pending his said appeal, otherwise he will be denied the right to secure a review of the order appealed from, and he further represents that the matter involved in this cause is one of the greatest public importance and one in which this Honorable Court, in aid of its appellate jurisdiction, should award a temporary injunction in accordance with the prayer of the bill of complaint filed

in this cause, and he hereby prays that such a temporary injunction, pending the hearing of its appeal, be awarded by this Honorable Court.''

This application is based upon the organic power of this court to issue ''all writs necessary or proper to the complete exercise of its jurisdiction.'' Sec. 5, Art. V. In effect the insistence is that unless this court issues a writ of injunction similar to that prayed for in the court below, the appellant's rights will be immediately lost, since the election is to take place before the return day of the appeal on the merits of the case. See Cohen v. L'Engle, 24 Fla. 542, 5 South. Rep. 235; Wheeler v. Meggs, 75 Fla. 687, 78 South. Rep. 685. See also Astca &c. v. County of Lake, decided June term, 1922, but not yet reported.

In view of the importance of the matter, and of the fact that on this record presenting questions of law only, the cause has been fully argued on its merits by counsel for both parties, the court will determine the merits of the appeal without passing upon the motion for a writ of injunction to be issued by this court. J. E. L. Co. v. City, 36 Fla. 229, text 262.

In State v. Commissioners of Volusia County, 28 Fla. 793, 10 South. Rep. 14, and Warren v. Board of Public Instruction for Hillsborough County, 86 Fla. 254, 97 South. Rep. 384, the cases were decided on the merits before the return of the writ of error or appeal. Crawford v. Gilchrist, 64 Fla. 41, 59 South. Rep. 963, where the merits of an appeal were determined on an application for supersedeas.

The contention of the appellant is in effect that under general principles of law applicable in the premises, the grouping of several alleged unrelated objects of a bond issue to be voted on as proposition 5, is a fraud upon the law and not within the power of the city officials, since

such grouping to be made on the tickets to be voted, deprives the voters of a right to vote separately on each of the seven alleged unrelated objects that are grouped in proposition 5.

The insistence of the appellees is that under the authority conferred by the charter act of the City of Tampa, the action of the city officials complained of is not illegal or in excess of the powers conferred by the charter acts.

The charter powers of the city include the following:

"The City of Tampa shall have the right to issue and sell bonds for municipal government improvements; Provided, Such issue and sale of bonds shall be ratified by a majority of the qualified electors of said city who are taxpayers and who paid taxes on their own property in the City of Tampa assessed and levied for the calendar year prior to that in which said election is held and actually voting at an election to be held for that purpose, not to exceed the amount of fifteen per cent. of the assessed value of the taxable property of said city." Sec. 41, Chap. 6402, Acts of 1911.

"All the powers of the city, except as otherwise provided by this charter amendment or by the Constitution of the State, are hereby vested in the City Commission, and except as otherwise prescribed by this charter amendment or by the Constitution of this State, the City Commission shall have the power to determine, by ordinance or resolution, by whom or in what manner the powers granted by this charter amendment shall be exercised." Sec. 3, Chap. 9095, Special Acts of 1921.

If the authority conferred upon the City Commission "to determine by ordinance or resolution by whom or in what manner the powers granted *by this charter amendment* shall be exercised," applies to the exercise of a power granted by a previous charter amendment, it does not au-

thorize the city commission to exercise the power here considered in a manner that conflicts with the general principles of law that are applicable to and are controlling in the premises.

A statute does not contemplate an unreasonable exercise of authority conferred by it, particularly when the taxing power and material property and personal rights are involved. Willis v. Special Road and Bridge District No. 2, Osceola County, Florida, 73 Fla. 446, 74 South. Rep. 495.

Action taken by municipal officers must be both legal and reasonable. This is particularly so under general grants of power.

In 5 McQuillan on Municipal Corporations, Section 2198, the rule is stated that "*If there are two or more separate and distinct propositions* to be voted on, each proposition should be stated separately and distinctly so that a voter may declare his opinion as to each matter separately, since several propositions cannot be united in one submission to the voters so as to call for one assenting or dissenting vote upon all the propositions; and elections are invalid where held under such restrictions as to prevent the voter from casting his individual and intelligent vote upon the object or objects sought to be obtained. *The object of the rule* preventing the submission of several and distinct propositions to the people united as one in such a manner as to compel the voter to reject or accept all is to prevent the joining of one local subject to others in such a way that each shall gather votes for all, and thus one measure, by its popularity or its apparent necessity, carries other measures not so popular or necessary and which the people, if granted the opportunity of separate ballots, might defeat. However, unless otherwise provided, it is proper to submit a number of propositions or questions at

one time, providing the ordinance specifies each separate question or proposition as such, and provision is made by which the voters are given opportunity to vote upon each specific proposition or question independent of the other questions submitted at the same time. This may be done upon a single ballot, but the ballot must state each proposition separately, so that the voter may be able to express his will with reference to each question.'' See 28 Cyc. 1590; 26 L. R. A. (N. S.) 665, note.

· This rule is amply sustained by reason and authority; it accords with the principles of fair dealing required of all officials in the exercise of public functions, powers or duties; and it is not in conflict with, but conforms to the views expressed and the decisions made on the facts presented in the cases of Potter v. Lainhart, 44 Fla. 647, 33 South. Rep. 215; Perry v. Town of Panama City, 67 Fla. 285, 65 South. Rep. 6; Merrell v. City of St. Petersburg, 74 Fla. 194, 76 South. Rep. 799.

A consideration of the ordinance in connection with the pleadings, inevitably leads to the conclusion that in grouping in one proposition numbered 5, several separate, distinct and unrelated objects for which the issue of bonds is in large amounts proposed, the voter is denied the substantial right and privilege of voting on the items severally. This is an injustice to the taxpayers of the city that is not contemplated by the charter acts and not permitted by the principles of law that govern in such cases, at least in the absence of contrary controlling provisions of law, that do not exist in this case. Note the *policy* of the State in separately submitting propositions to be voted on in the same election, as indicated by Section 1, Article 17, of the Constitution.

The order appealed from is reversed and the cause is remanded for appropriate proceedings.

Reversed.

TAYLOR, C. J.; AND ELLIS, BROWNE, WEST AND TERRELL, J. J., concur.