STATE OF FLORIDA AND THE TAXPAYERS, PROPERTY OWNERS AND CITIZENS OF SAID CITY OF DAYTONA BEACH, INCLUDING NON-RESIDENTS OWNING PROPERTY OR SUBJECT TO TAXATION THEREIN, v. THE CITY OF DAYTONA BEACH, FLORIDA.

33 So. (2nd) 218                      June Term, 1947

January 9, 1948                        Division A

*Murray Sams,* for appellant.

*J. Velma Keen, Curtis H. Gardiner* and *Mitchell* and *Pershing* (New York, N. Y.) for appellee.

TERRELL, J.:

In October 1947, the City Commission of Daytona Beach adopted ordinance 47-143 providing for the issuance of $1,350,000. Recreational Facilities Bonds for the purpose of paying the cost of constructing and equipping recreational facilities within the city. The said bonds were subject to an approving vote of the freeholders and were designed to provide the following facilities: (1) auditorium, estimated to cost $750,000., (2) Stadium, estimated to cost $250,000., (3) Boat basin, estimated to cost $250,000., (4) Negro recreational center, estimated to cost $100,000.

An election was held after being properly called and advertised, a majority of the freeholders participated and the said issue of recreational facilities bonds was approved by an overwhelming vote of the freeholders. The City Commission then adopted Resolution 47-179 providing for the issuance of said recreational facilities bonds for the purposes and in the amounts heretofore stated. Pursuant to Sections 143 and 160 of the City Charter, as amended by Chapter 24467, Special Acts of 1947, the City Commission granted gas and electric franchises to the Florida Power and Light Company. The ordinances granting these franchises were approved by the qualified electors of the city in an election called and held for that purpose. The foregoing with other facts were before the chancellor and were considered on the issue raised in the petition to validate. This appeal is from a final decree validating said bonds.

The first question proffered for our determination is:

"Did the submission at an election, as a single proposition of issuing $1,350,000. Recreational Facilities bonds of the City of Daytona Beach 'for the purpose of paying the cost of constructing and equipping Recreational Facilities within the city consisting of an auditorium, the estimated cost of which is approximately $750,000., a stadium, the estimated cost of which is approximately $250,000., a boat basin, the estimated cost of which is approximately $250, 000, and a Negro Recreational Center, the estimated cost of which is approximately $100,000. 'violate the provisions of Section 6 of Article IX of the Constitution of Florida?"

This question turns on whether or not the four purposes for which the bonds are proposed are distinct and unrelated or, on the other hand, fall in the category of those being so related as to be for a single purpose. The law is well settled that if bonds are proposed and issued for two or more purposes that are so related as to amount to a single purpose, they may be combined and voted on as a single issue, otherwise each proposition must be submitted so that it can be voted on separately. Lewis v. Leon County, 91 Fla. 118, 107 So. 146; State v. Dade County, 144 Fla. 448, 198 So. 102; Antuono v. City of Tampa, 87 Fla. 82, 99 So. 324. A search of the de-

cisions from many jurisdictions reveals no departure from the doctrine of these cases.

In this final decree the chancellor found that Daytona Beach is a year around vacation and resort center, whose economy is dependent primarily on tourist and vacation trade, this kind of trade constituting four-fifths of all business done in the city. The city has heretofore provided a golf course, swimming pools, beaches, playgrounds, parks, band shells, shuffle board and lawn bowling, that the construction of an auditorium, stadium, boat basin, and a Negro recreational center will supplement the existing facilities and provide additional recreational opportunities as a part of a city-wide recreational program designed to enhance the attractiveness of the city as a resort center.

The finding of the chancellor finds ample support in the record and we think offers a complete affirmative answer to the question presented, whether or not the four objects for which the recreational facilities bonds as proposed are so related that they amount to a single purpose and were properly submitted and voted for in a single issue. The unanimity with which the electorate approved them removes any room for confusion on their part as to the purpose of the bonds. Section 139 of the Charter of the City of Daytona Beach (Chapter 19768, Special Acts of 1939) as amended by Chapter 24473, Special Acts of 1947, is ample authority on the part of the city to issue the bonds in question for the purpose stated.

The second question brought up for determination is as follows:

"Does the City of Daytona Beach have power to pledge for payment of principal and interest on said bonds, which bonds are general obligations of the city and for the payment of which the city is required to levy annually a sufficient tax on all taxable property in the city, the amounts payable in each fiscal year under the provisions of the ordinances granting gas and electric franchises to the Florida Power & Light Company, such annual tax levy to be reduced in any fiscal year by the amount paid to the city in the preceding fiscal year under such franchises?"

Unquestionably the bonds in question are general obligations of the city for which the full faith and credit of the city is pledged and their issuance was approved by a majority of the votes cast in an election in which a majority of the freeholders participated, as required by Section 6, Article IX of the Constitution. It is also shown that Section 95 of the City Charter requires the annual levy of a tax on all taxable property sufficient to pay interest on the city's indebtedness and to create a sinking fund to retire the principal thereon. In addition to this, a tax without limit may be imposed for the general purposes of the city.

The ordinances granting gas and electric franchises to the Florida Power & Light Company agree to make annual payments to the city and these payments become a part of the general revenues for the payment of its obligations. Ordinance 47-143 and resolution 47-179, pledge the latter funds for the payment of principal and interest and provide a sinking fund to retire the Recreational Facilities Bonds. The annual tax required to retire said bonds is reduced each year by the amounts placed in the sinking fund the preceding fiscal year, and which remains to the credit of the fund at the time the tax is imposed.

Sections 21 and 93 of the City Charter and Section 169.01, Florida Statutes 1941, afford additional relief and impose other requirements pertinent to the question under review and it is shown that these requirements are in all respects being met so there can be no doubt that the City of Daytona Beach is authorized to pledge its receipts from the gas and electric franchises of the Florida Power & Light Company to retire the Recreational Facilities Bonds according to the tenor and effect of the ordinance and resolution authorizing their issue.

It is accordingly our conclusion that the City of Daytona Beach had ample power to issue the $1,350,000. Recreational Facilities Bonds in the manner proposed, that question two and each question presented was correctly answered by the chancellor, so his decree of validation should be and is hereby affirmed in toto.

Affirmed.

THOMAS, C. J., CHAPMAN and SEBRING, JJ., concur.