235 So.2d 1 (1970)
The STATE of Florida, Appellant,
v.
CITY OF ST. AUGUSTINE, Florida, Appellee, Two Cases.
Nos. 39070, 39071.
Supreme Court of Florida.
April 30, 1970.
*2 Stephen L. Boyles, State's Atty., for appellant.
Robert A. Andreu, St. Augustine, for appellee.
Frank L. Watson, Jacksonville, amicus curiae.
DREW, Justice.
These consolidated appeals from two final judgments of the trial court validating separate issues of general obligation bonds of St. Augustine, payable from ad valorem taxes, present for decision the following questions:
1. Whether the several capital projects to be funded from the bond proceeds are so unrelated that grouping them on the same ballot deprived the voter of the right to vote separately on unrelated projects. (Raised by Assignments of Error Nos. 1, 2 and 6.)
2. Whether Section 169.01, Florida Statutes 1967, requiring that bond issues be approved by a majority of votes cast in an election in which a majority of the freeholders who are qualified electors residing in the city shall participate, was repealed by Section 12(a) of Article VII of the Constitution of the State of Florida as revised in 1968. (Raised by Assignments of Error Nos. 1, 2, 3 and 7.)
3. Whether the owner of a freehold whose property is wholly exempt from taxation to retire these bonds qualifies as an owner of a freehold "not wholly exempt from taxation" under Article VII, Section 12(a) of the Constitution of the State of Florida as revised in 1968, merely because that freeholder's property is subject to a tax on some ad valorem bonds previously issued by the city. (Raised by Assignments of Error Nos. 1, 2 and 3.)
The proposition on the ballot which affords the basis for the state's contention in the first question, is:
"PROPOSITION NO. 1
"Shall the City of St. Augustine, Florida, issue $1,550,000 principal amount of general obligation bonds of said City bearing interest at not exceeding six per centum (6%) per annum, maturing not later than thirty years from the date of issuance thereof, payable from ad valorem taxes levied on all taxable property in said City without limit as to rate or amount for the purpose of financing the cost of reconstructing, renovating and restoring the Lightner Museum Building for a city hall and other city offices, including a fire truck and fire station, and the purchase of municipal radio equipment which will be installed in the new city hall and on vehicles of the City, together with any other purposes appurtenant or incidental thereto, as more specifically described and provided in the Resolution of the City Commission of said City adopted on the 24th day of March, 1969?"
*3 Generally, several separate, distinct and unrelated projects may not be combined in one ballot.[1] However, if there is some relation between several projects, especially when a single plan of financing is involved, such projects may be included in one ballot.[2] We hold that the items for which the $1,550,000 bonds are to be issued are so closely related that they constitute a single purpose and that placing them all on one ballot did not violate any substantial rights of the elector or deny to him the privilege of making an intelligent choice.
While the point is not raised here, the better procedure would be for the elector to question the sufficiency of the ballot in appropriate proceedings before  not after  the election has been held and the results proclaimed.[3]
The second and third questions present greater difficulties. The answers to both are to be found in the Constitution of Florida  1968 Revision. Because this case is the first to appear here since the effective date of the 1968 Constitution and will be controlling in future bond elections in this state on these two vital points, the Court sua sponte appointed the Honorable Frank L. Watson of the Jacksonville Bar as Amicus Curiae. The Court expresses its appreciation to Mr. Watson for his exhaustive brief, and to Mr. Watson and able counsel for the parties for their able arguments presented at the Bar of this Court.
During The Florida Boom of the 1920's, millions of dollars in bonds were issued and sold by the various local governmental units in the state. When the boom was over, financial chaos prevailed. There were few areas in the state that did not default in their public obligations. For the purpose of preventing future irresponsible and excessive public debts, the Florida Constitution was amended in 1930 to require that all local bonds be approved at a freeholder election by a majority of the freeholders at an election participated in by a majority of the qualified freeholders in such local district.[4]
The language of the 1930 Amendment as construed by this Court in many decisions was clear and unambiguous to the effect that no local bonds payable from ad valorem taxes could lawfully be issued unless approved by a majority of the votes cast in an election in which a majority of the eligible freeholder electors participated.
Since the language of Section 12, Article VII, of the 1968 Constitution, F.S.A.[5] differs so materially in this respect from the 1930 Amendment, we must consider whether the people of Florida intended to rewrite the constitutional limitations on the subject of local bonds and whether said section of the 1968 Constitution entirely preempts all provisions of the 1885 Constitution *4 on the subject of local bond elections, the provisions of Section 10, Article XII, of the 1968 Constitution,[6] notwithstanding.
It is abundantly clear that the requirement contained in the 1930 Amendment to the 1885 Constitution that bonds must be approved by a majority of the qualified freeholder electors in an election in which a majority of such electors participated was intentionally and deliberately omitted from the 1968 Constitution.[7] The omission of *5 such language from the new Constitution must be presumed to have been intentional.[8]
The definition of the term "vote of the electors" in Section 12(d), Article X, of the 1968 Constitution[9] leaves no doubt whatever that all that is now required is that a majority of the qualified freeholders participating in the election vote in favor of the issuance of the bonds. At the oral argument in this cause, appellants, appellees and Amicus Curiae were in accord on this point. We have dealt with this problem, however, so that the question may be placed in repose by authority of an opinion of this Court in an initial interpretation of this constitutional provision.
After 1930 many bond elections in the state failed by reason of voter apathy. The major problem in the issuance of public obligations was securing participation in an election by a majority of freeholders. Failure to participate became the accepted method in many areas of defeating local bond issues. To overcome this situation the Legislature provided for the re-registration of freeholders as a basis for determining the number qualified to participate in a given bond election.[10] Such cumbersome and costly procedures were, in our judgment and we so hold, intentionally and deliberately eliminated in the Constitution of 1968 by eliminating the requirements of participation found in the 1885 Constitution.
Section 169.01, Florida Statutes 1967, F.S.A., referred to in question number two, and other statutes of like effect now on *6 the books of this state requiring majority participation in freeholder bond elections, are no longer valid. A statute cannot lawfully provide a stricter requirement for holding local bond elections than that contained in the Constitution.
Any requirement in the Charter of the City of St. Augustine requiring the participation of a majority of the qualified freeholders in order to have a valid election is no longer effective. The subject provision of the 1968 Constitution eliminating such a requirement is self-executing.[11] Consequently, when the 1968 Constitution became effective in January 1969, all provisions contained in the statutes of this state in conflict with Section 12 of Article VII became inoperative, ineffective and invalid to the extent of such conflict.[12]
We summarize our holding on this second question as follows: Section 12 of Article VII of the 1968 Constitution based upon the constitutional definition of "vote of the electors" contained in said Constitution and upon the previous decisions of this Court, supra, now requires only that local ad valorem tax bonds be approved by vote of a majority of the qualified freeholders voting in an election held for such purpose. The provisions of all statutes of this state to the contrary were superseded upon the effective date of the 1968 Constitution. Therefore, the election held by the City of St. Augustine on the basis of which these bonds are to be issued, although not having been participated in by a majority of the qualified freeholder electors, was a valid election and the judgment of the trial court in this respect is approved and confirmed.
We now direct our attention to the third question requiring an interpretation of that portion of Article VII, Section 12, supra, which requires that local bonds shall be approved by the electors who are owners of freeholds "not wholly exempt from taxation."[13]
It is conceded here that all freeholders in the City of St. Augustine were permitted to vote. The City takes the position that even though some of those freeholders own homesteads currently assessed at $5,000 or less and will therefore not be subject to taxation for the retirement of the bonds involved in these proceedings, they are not "wholly exempt from taxation" within the meaning of the foregoing constitutional provision because they are being taxed for the retirement of bonds issued prior to the 1930 Amendment. The state argues that the constitutional provision above referred to must mean "wholly exempt from taxation" to retire the bonds being voted on; otherwise the constitutional phrase is meaningless. Once the old ad valorem bonds are retired, the state argues, the freeholder whose homestead is valued at $5,000 or less will be wholly exempt from taxation. The state further contends that the purpose of such language was to limit the right to vote in such elections to those who bear the burden of paying off the bonds to be issued; or to put it another way, those who simply benefit from the issuance of such bonds without being correspondingly liable to the payment thereof should not be permitted to have a voice in the question of whether such an obligation should be incurred.
The state and amicus curiae make a most persuasive argument supporting their contention. We cannot agree, however, that this section of the Constitution requires any interpretation. The language is clear. It says "not wholly exempt from taxation." *7 It would be difficult indeed to explain to the freeholder who appears at the polls to vote in a bond election and presents a tax receipt showing that his property was taxed by the City, that he was the owner of property "wholly exempt from taxation." We could speculate on the intention of those drafting this provision in the Constitution, as well as on what the people thought they were voting on. To give effect to the plain language of the amendment avoids the necessity of any speculating whatever. No purpose will be served by an extensive discussion of rules of construction in cases dealing with similar situations. We simply hold that the constitutional provision means exactly what it says; that any qualified freeholder elector residing in the district issuing the obligations is entitled to participate in such election if his property is subject to taxation for any purpose whatever.
The two judgments appealed from are hereby
Affirmed.
THORNAL, CARLTON, ADKINS and BOYD, JJ., concur.
ERVIN, C.J., concurs specially with opinion.
ROBERTS, J., dissents.
ERVIN, Chief Justice (specially concurring).
I concur in Justice Drew's opinion, which I consider to be an excellent interpretation of the new provisions relative to bond elections in the 1968 Constitution. Particularly, I think it would have been unfortunate if we had not reached the conclusion we did concerning who were the eligible participants in this city bond election under the prescribed constitutional language "not wholly exempt from taxation." The greater the exclusion of any electors from participating in bond election referendums, the greater is the possibility of judicial disapproval of the bond issue on the basis of taxpayer discrimination. Compare Kramer v. Union Free School District, 395 U.S. 621, 89 S.Ct. 1886, 23 L.Ed.2d 583, and Cipriano v. City of Houma, 395 U.S. 701, 89 S.Ct. 1897, 23 L.Ed.2d 647; Kolodziejski v. City of Phoenix, Arizona et al., 313 F. Supp. 209, U.S.Dist.Court for District of Arizona, opinion filed November 17, 1969; Stewart et al. v. Parish School Board of the Parish of St. Charles et al., 310 F. Supp. 1172, United States District Court, Eastern District of Louisiana, Opinion filed February 25, 1970.
NOTES
[1] Antuono v. City of Tampa, 87 Fla. 82, 99 So. 324 (1924).
[2] State v. Dade County, 39 So.2d 807 (Fla. 1949); State v. City of Daytona Beach, 160 Fla. 13, 33 So.2d 218 (1948); State v. Dade County, 144 Fla. 448, 198 So. 102 (1940); Lewis v. Leon County, 91 Fla. 118, 107 So. 146 (1926); and Merrell v. City of St. Petersburg, 74 Fla. 194, 76 So. 699 (1917).
[3] 11 Fla.Jur. Elections § 123 (1957).
[4] Fla. Const. art. IX, § 6 (1885 as amended).
[5] Fla. Const. art. VII, § 12 (1968) reads as follows:

"Local bonds.  Counties, school districts, municipalities, special districts and local governmental bodies with taxing powers may issue bonds, certificates of indebtedness or any form of tax anticipation certificates, payable from ad valorem taxation and maturing more than twelve months after issuance only: (a) to finance or refinance capital projects authorized by law and only when approved by vote of the electors who are owners of freeholds therein not wholly exempt from taxation; or (b) to refund outstanding bonds and interest and redemption premium thereon at a lower net average interest cost rate."
[6] Fla. Const. art. XII, § 10 (1968) reads as follows:

"Preservation of existing government.  All provisions of Articles I through IV, VII and IX through XX of the Constitution of 1885, as amended, not embraced herein which are not inconsistent with this revision shall become statutes subject to modification or repeal as are other statutes."
[7] The Supreme Court Library contains a special collection of documents relating to the Florida Constitution  1968 Revision. We summarize below the development of Article VII, Section 12, "Local Bonds," which can be traced by an examination of the various drafts and miscellaneous materials listed on the library's index to this special file entitled "Chronological Development of 1968 Constitution." The documents referred to herein appear on the index and are contained in the special file.

A valid bond election under Article IX, Section 6 of the Constitution of 1885 as amended, required participation by a majority of the qualified freeholders, and there were no restrictions as to which freeholders were qualified electors:
"Article IX, Section 6 (Bonds; State, County, Municipal), Constitution of 1885: * * * [T]he Counties, Districts, or Municipalities of the State of Florida shall have power to issue bonds only after the same shall have been approved by a majority of the votes cast in an election in which a majority of the freeholders who are qualified electors residing in such Counties, Districts, or Municipalities shall participate, to be held in the manner to be prescribed by law * * *."
The Florida Constitution Revision Commission at its Convention beginning November 28, 1966, was presented an initial draft of a proposed Constitution prepared on the basis of final committee reports compiled after public hearings had been held throughout the state. The section concerning local bonds in this initial draft continued the requirement appearing in the 1885 Constitution that an election be participated in by a majority of the freeholders, but included an additional requirement that those freeholds be "not exempt from taxation:"
"Article VIII, Section 13. Local bonds.  Counties, * * * municipalities and special districts may issue general obligation bonds * * * only when approved by a majority of the votes cast in an election participated in by a majority of the electors of the county, school district, municipality or special district who are owners of freeholds which are not exempt from taxation. * * *"
The Constitution Revision Commission met in Tallahassee from November 28, 1966, through December 16, 1966. In sessions during that period, the Commission eliminated the requirement that a majority of the freeholders must participate in a bond election, and altered the wording of the requirement that participants must be owners of freeholds "not exempt from taxation" to read "not wholly exempt from taxation" (emphasis added). The section on local bonds of the "Proposed Revised Constitution of Florida  Prepared by Florida Constitution Revision Commission, 10-10-66, as amended in sessions November 28, 1966  December 16, 1966," containing the above changes from the original draft presented to the Commission at the beginning of its deliberations, reads as follows:
"Article VII, Section 13. Local bonds.  Counties, * * * municipalities, and special districts may issue bonds payable from ad valorem taxation * * * only when approved by a majority of the votes cast in an election by the electors of the county, school district, municipality or special district who are owners of freeholds therein which are not wholly exempt from taxation."
A Special Session of the Legislature was held from July 31, 1967, through August 18, 1967, for the purposes of constitutional revision. Both House and Senate Joint Resolutions (HJR 3-XXX (67) and SJR 2-XXX (67)) contained local bond sections identical to that appearing in the Proposed Revised Constitution of Florida prepared by the Constitution Revision Commission, quoted above. Following the Special Session, the House and Senate's Joint Committee on Style and Drafting produced a draft dated September 29, 1967, containing the same local bond section initially presented to each House. The Legislature's Interim Joint Constitutional Revision Committee drafts dated October 17, 1967, and October 30, 1967, contained no changes in the local bond section relative to freeholder elections.
The local bond section as it now reads in the 1968 Constitution first appeared in the December 11, 1967, draft of the Legislature's Joint Committee on Style and Drafting:
"Article VII, Section 12. Local Bonds.  Counties, * * * municipalities, * * * and local governmental bodies with taxing powers may issue bonds * * * payable from ad valorem taxation * * * only:
"(a) to finance or refinance capital projects authorized by law and only when approved by vote of the electors who are owners of freeholds therein not wholly exempt from taxation; or * * *."
The Committee's substitution of the phrase "by vote of the electors" for the phrase "by a majority of the votes cast in an election by the electors of the county, school district, municipality, or special district," did not substantively change the section, inasmuch as at the same time the phrase "vote of the electors" was defined in Article X, Section 12, 1968 Constitution (Rules of Construction) as follows:
"Unless qualified in the text the following rules of construction shall apply to this constitution.
* * * * *
"(d) `Vote of the electors' means the vote of the majority of those voting on the matter in an election, general or special, in which those participating are limited to the electors of the governmental unit referred to in the text."
Substitution of the shorter phrase "vote of the electors" for the more lengthy provision in drafts prior to the one dated December 11, 1967, was arrived at by a special study subcommittee on bonding at a meeting held Tuesday, November 21, 1967. A Summary of Changes made by the House and Senate Joint Committee through December 11, 1967, recites only that Section 11, Local Bonds, was "restyled by staff after consultation with Bond Counsel." The local bond section initially appearing in the December 11, 1967, draft was ultimately included in the proposed Constitution presented to the people of Florida and adopted by their vote November 5, 1968.
[8] In re Advisory Opinion to the Governor, 112 So.2d 843 (Fla. 1959).
[9] "`Vote of the electors' means the vote of the majority of those voting on the matter in an election, general or special, in which those participating are limited to the electors of the governmental unit referred to in the text." Fla. Const. art. X, § 12(d) (1968).
[10] Fla. Stat. § 97.081 (1967), F.S.A.; Patterson, Legal Aspects of Bond Financing, 6 U.Fla.L.Rev. 287, 311 (1953).
[11] State v. Special Tax School Dist. No. 5 of Dade County, 107 Fla. 93, 144 So. 356 (1932); Gray v. Bryant, 125 So.2d 846 (Fla. 1960).
[12] State By and Through Overstreet v. Andrews, 113 So.2d 701 (Fla. 1959); State v. Volusia County School Building Authority, 60 So.2d 761 (Fla. 1952); Thomas v. State, 58 So.2d 173 (Fla. 1952); and Perry v. Consolidated Special Tax School District, 89 Fla. 271, 103 So. 639 (1925).
[13] See footnote 7, supra, for development of this wording in the 1968 Revision.