CARLTON, Justice:
This is a direct appeal from an order of the Circuit Court, Dade County, validating a capital improvement bond issue of $350,000.00 for the acquisition of a parcel of land by the City of Miami Beach for public park purposes. Article V, Section 4(2), Florida Constitution, F.S.A. We affirm the validation.
In September 1969, the City Council of the City of Miami Beach adopted a resolution authorizing the City to issue the bonds subject to freeholder approval at a special election to be held in conjunction with the City’s general election on November 18, 1969. The general election features three City Council seat races and sixteen proposed Dade County Home Rule Charter Amendments.
On election day, the bond issue, the candidates for City Council and the sixteen proposed Charter Amendments were all on the same ballot in the voting machines. On each machine, however, there was a “lock-out device” by means of which only freeholders could vote on the bond issue. Of the 9,420 freeholder electors qualified to vote on the bonds, 5,847 presented themselves at the polls. Although each of these 5,847 persons entering the polling booth were authorized to vote on the bond issue, only 3,528 of them actually pulled one or the other of the levers: 2,851 voted “For” the bonds and 677 voted “Against” the bonds. Presumably, those not voting on the bonds voted on other issues and races appearing on the ballot.
A majority of those voting on the bonds having approved the issue, the City filed its Petition in the Dade County Circuit Court for validation. The State contested the matter, but on June 5, 1970, the Circuit Court entered a Final Decree validating the bonds. This appeal followed.
The State opposes the validation with the argument that a majority participating in the election did not approve the bond issue : while 5,847 qualified voters entered the polling booths, only 2,851 — less than *27 half- — -voted in favor of the issue. It contends that under State v. Town of Surfside, 104 So.2d 579 (Fla.1958), State v. City of St. Augustine, 235 So.2d 1 (Fla.1970), and Fla.Stat. § 100.281, F.S.A., a majority of those participating, and not just of those voting, must approve the issue.
The Town of Surf side case is the keystone of the State’s position. We said therein that entry into a polling booth constituted participation in a bond election, whether or not an actual vote was cast. This decision was made within the context of Article IX, Section 6, of the Florida Constitution of 1885, which required majority participation of qualified electors if a bond election was to be valid. The State maintains that even though the 1968 constitutional revision resulted in the deletion of majority participation in bond elections, a bond proposal must still be approved by a majority vote of those actually entering the polling booth and qualified to vote, i. e., those “participating” in the election under the definition announced in Town of Surf side. Support for this view also comes from Fla.Stat. § 100.281, enacted after revision. It provides that bonds would be deemed authorized if “a majority of the votes cast in a bond election be in favor of approving the issuance of bonds,” but also that:
“In the event a majority of those participating did not vote in favor of approval then the issuance of those specified bonds is deemed to have failed of approval and it is unlawful to issue or attempt to issue the said bonds.” (Emphasis supplied.)
The State also points to State v. City of St. Augustine, supra, a case treating with the differences in bond provisions between the 1885 and'1968 Constitutions. In it, we said:
“The definition of the term ‘vote of the electors’ in Section 12(d), Article X, of the 1968 Constitution leaves no doubt whatever that all that is now required is that a majority of the qualified freeholders participating in the election vote in favor of the issuance of the bonds.” (Emphasis supplied.)
The State’s position is logically consistent and well-reasoned, but there are flaws within it fatal to the State’s cause. Under Article IX, Section 6, of the Constitution of 1885, satisfaction of two distinct criteria was necessary for successful approval of a bond issue: first, a majority of qualified freeholders had to participate in the election; second, a majority of the votes cast had to be in favor of the issue. In T own of Surf side, supra, we were concerned only with the first criterion. Our holding that “participation” was satisfied by entry into the polling booth had no affect upon, or relevance to, the second criterion of “a majority of the votes cast in an election.” When the Constitution was revised in 1968 and the requirement of majority participation was deleted, all that remained under Article VII, Section 12 of the 1968 Constitution, was the requirement of majority approval by “vote of the electors.” Under Article X, Section 12(d) “vote of the electors” was defined as: “the vote of the majority of those voting on the matter in an election, general or special, in which those participating are limited to the electors of the governmental unit referred to in the text.” (Emphasis supplied.)
The reference in City of St. Augustine, supra, to “a majority of the qualified freeholders participating,” cited by the State, was not meant to be an announcement that the Town of Surf side interpretation of “participation” carried over into the new constitutional requirements for bond elections, and that a bond issue would only pass if more than half of those qualified to vote actually voted once in the polling booth. Rather, it was intended to be synonymous with “a majority of the votes cast by those qualified to vote.” Though the usage of the contested phrase was admittedly potentially misleading, the clear meaning of the opinion when read as a whole was that only a majority vote was *28 required. Note, for example, that our concluding remark in City of St. Augustine on the issue of “vote of the electors” was:
“We summarize our holding as follows: Section 12 of Article VII of the 1968 Constitution based upon the constitutional definition of ‘vote of the electors’ contained in said Constitution and upon the previous decisions of this Court, supra, now requires only that local ad valorem tax bonds be approved by vote of a majority of the qualified freeholders voting in an election held for such purpose.” (Emphasis supplied.)
 We concede that Fla.Stat. § 100.-281, F.S.A., appears to require that a majority of those participating in the election approve the issue or it will be deemed to have failed of approval. But in light of the sole constitutional requirement of “a majority of the votes cast,” this language can have no meaning other than that, of those actually voting, a majority must approve the issue. Participation here, unlike in Town of Surf side, supra, must mean the actual casting of ballots. As we said in City of St. Augustine, “A statute cannot lawfully provide a stricter requirement for holding local bond elections than that contained in the Constitution.” 235 So.2d 1, at 6.
Although our decision is controlled by the fundamental mandate of the Constitution, we find two other factors additionally persuasive. First, absent constitutional provision to the contrary, we think that an abstention from voting, once in the polling booth, should not be construed as a vote either for or against any given proposition. Any one of a number of disparate reasons might compel an elector to abstain; he may desire to demonstrate by his physical presence that he is aware of his obligation to vote in a democratic society; or, he might have decided at the last moment that he is unfamiliar with the candidates or issues and would prefer not to vote rather than to vote blindly; or, when multiple issues or candidates are involved he might be interested in voting only in certain races or on certain issues, without voting on every race or issue. Even when no question appears on the ballot other than a bond issue, we view an abstention as simply that and no more, and certainly not as an additional means of voting against a proposition.
Secondly, we are concerned with the effect of City of Phoenix, Ariz. v. Kolodziejski, 399 U.S. 204, 90 S.Ct. 1990, 26 L. Ed.2d 523 (1970) on bond elections if the State’s position were sustained. The United States Supreme Court has held that non-property owners are now to be allowed to vote in general obligation bond elections heretofore limited to property-holders.[1] Frequently, bond issue balloting is set up in tandem with an election or with other issues so that the largest number of citizens will be drawn to the-polls. Since all electors may now be privileged to vote on general obligation bonds under Kolodziej-ski, all who entered the polling booth would be “participating” under the State’s view. We know from experience that many voters cast ballots for major positions, such as President, Governor, Senator or Congressman, without voting upon the remaining issues or races that may appear on the ballot. Under the State’s theory of *29 “participation,” these “single issue” or “single race” voters would be “participating” in the election and, therefore, their abstention from bond issues on the ballot would be counted as a vote against the bond issue. We do not think that such a result is intended under the present Constitution.
The other issues raised by appellant have been considered, but we find them to be without merit and they do not warrant discussion. Having determined that the requisite majority of voters supported the bonds, and finding that in all other aspects the issue has been properly handled, it is the judgment of this Court that the order appealed from must be affirmed.
It is so ordered.
ROBERTS, C. J., and ERVIN, Mc-CAIN and DEKLE, JJ., concur.

. This bond election held on November 18, 1969, comes under the protective aegis expressly extended by the United States Supreme Court in City of Phoenix, Ariz. v. Kolodziejski, 399 U.S. 204, 90 S.Ct. 1990, 26 L.Ed.2d 523 (June 23, 1970), which expressly protects bond elections prior to that date if no constitutional challenge lias been brought prior thereto and within the time limits provided by statutes authorizing contests of elections. The date of the election in this case being November 18, 1969, the time for contesting the election under Section 102.161, Florida Statutes, F.S.A., was within ten (10) days after the canvassing of the election or November 29, 1969. Nothing was done by way of attempted intervention until May 20, 1970. Therefore, the restraints of Kolodziejski do not apply. See also State v. City of Miami Beach, 245 So.2d 863 (Fla.1971).