PER CURIAM:
This cause is before us on direct appeal from a decision by the Circuit Court, Dade County, validating a $39,890,000 bond issue for public park and recreational facilities in the City of Miami. Our jurisdiction in bond validation proceedings attaches under Fla.Const. Art. V, § 4(2), F.S.A. We affirm.
At the outset we note the unusual nature of the appeal of this validation proceeding in that the able state attorney for the Eleventh Judicial Circuit does not contest the validation below as he usually does. The appellants, here on separate appeals are Grapeland Heights Civic Association (hereafter sometimes called “Grapeland”) and Florida East Coast Railway (“Railway”). In the trial proceeding Grapeland intervened and participated. Even though Railway did not appear at the trial level, Appellee City of Miami (“City”) has not challenged Railway’s standing to appeal.
By court order we consolidated these appeals from the same final judgment confirming the bonds. Grapeland and Railway present some different points and arguments, but we shall generally review them together in this opinion.
Initially, Grapeland challenges two procedural orders by the trial judge denying a motion for continuance and a motion for default relating to the City’s failure to answer interrogatories. Suffice to say we have carefully examined the record in this regard and find no abuse of discretion.
The next point alleges that the trial court limited the legal issues to matters within Chapter 75, Florida Statutes, F.S.A. This contention centers around the trial judge’s statement to Grapeland’s counsel that Chapter 75 precludes consideration of irrelevant issues. A close review of the judge’s remarks discloses his intent to limit the trial to relevant issues, not to Chapter 75. These comments in no way restricted counsel in asserting any relevant matter under any other applicable statute, e. g., Fla.Stat. § 100.341, F.S.A., mentioned by that counsel.
Grapeland and Railway jointly contest the legality of the ballot format. It is argued that the failure to list specifically each capital project on the ballot invalidates the bond issue. The case of State v. Dade County, 144 Fla. 448, 198 So. 102 (1940), negates this claim.[1] There the bond ballot expressed Dade County’s intent to acquire land for park purposes. We held this general objective appearing on the ballot to be sufficient. It adequately informed the voters on the proposition and did not mislead them. The ballot in our case contains similar language. It provides in pertinent part:
. for the purpose of providing funds, together with any other available funds, to pay the cost of acquiring, ■ con *323 structing, developing, extending, enlarging, filling and improving public park and recreational facilities in the City of Miami. ...”
Relying on State v. Dade County, supra, we see no reason for requiring greater specificity in the ballot under review.
The next argument on ballot format refers to the single purpose rule in bond elections. Appellants attack the ballot on the ground that it combines two unrelated purposes or objectives in a single bond proposition. The “two objectives” are parks and recreational facilities in the downtown area and parks and recreational facilities in the outlying neighborhoods. According to appellants the voters should be given the opportunity to vote on each objective separately. We disagree. Under the single purpose rule two or more unrelated purposes must be separated on the ballot.[2] However, interrelated purposes in the same financing plan may be considered as a single purpose and can be combined in one bond issue.[3] Applying the latter principle these two objectives for parks and recreational facilities constitute a single purpose. Therefore, the ballot authorizing one vote for or against the two closely related objectives is not unlawful.
We now turn to the question of whether the bonds were actually approved by the voters. The results of the election were as follows:
59,385 Entered the voting booths
20,453 Voted for the bonds
15,238 Voted against the bonds
An analysis of these figures indicates that a majority of the electors voting on the bond issue approved the bonds. However, a majority of the voters entering the voting booths did not approve them. The question becomes: Does the term “participating” in Fla.Stat. § 100.281[4] mean voting on the bond issue or entering the voting booth? In State v. City of Miami Beach, 257 So.2d 25, 28 (Fla.1971), Mr. Justice Carlton answered this question by saying: “Participating” means “the actual casting of ballots” on the issue presented. Accordingly, these bonds were approved by the prescribed majority of voters, namely, a majority of those voting on the bond issue.
We shall next consider a constitutional argument strongly urged by Grape-land and Railway as a major contention. They jointly challenge the validation on the theory that the City’s Resolution 72-15 stating the purposes, for the bonds, instead of the projects, violates the new constitutional provision (Art. VII, § 12) limiting municipalities to bonds for “capital projects authorized by law.” This controversy turns in part upon an interpretation of the constitutional words “authorized by law.” Grapeland and Railway believe “authorized by law” alludes to the immediate, enacting city ordinance (law) for the bond issuance and that accordingly the constitutional expression, “capital projects authorized by law,” mandates the City to pass an ordinance (law) listing each capital project as thereby being “authorized.”
We cannot agree with this analysis for very basic reasons. It is the City’s author *324 ity (“authorized”) TO act which is referred to, as by virtue of the “law” which is its charter (enacted by a law passed by the Legislature) giving it the power to pursue the issuance of the bonds, for lawful (“authorized”) purposes (“projects”). The constitutional language does not refer to the wording of the City’s enacting resolution. If that were the “law” referred to, it would be a grant to municipalities of a “self-starter” approach to whatever they chose to pursue even though it were not within the cities’ authority (“authorized by law”). We think our analysis demonstrates the logic of the interpretation of “projects authorized by law” as being those that the City is empowered to pursue.
Moreover, our constitution supports this reasoning. The import of “authorized by law” must of course be based on the definition of the word “law”. Although the term “law” has additional meanings, e. g. the case law, we are only concerned here with one particular definition. What does the word “law” in our constitution mean? We derive the constitutional meaning from Art. Ill, § 6. According to this constitutional provision, every law must include the words: “Be it enacted by the Legislature of the State of Florida.” From this premise, it necessarily follows that “law” in our constitution means an enactment by the State Legislature (as the enactment into law of the city charter) — not by a City Commission or any other political body.
In this light the City has the authority to adopt any ordinance or resolution within its charter powers and not in conflict with any other legislative requirement or a constitutional prohibition.
We find no requirement, as urged by appellants, that the City must expressly include each capital project in its resolution. The City’s resolution articulating the purposes for the bonds as distinguished from the specific projects, buttressed by the record before the City Commission which sets forth the actual projects, is valid. Lengthy, adversary public consideration given to the 39 park designations as the “projects” upon which the bond moneys will be expended, supplements and supports the resolution and specifies these particular park areas as the projects involved, thus meeting objections that these bond moneys “may be spent for airports, astrodomes or other projects.”
It is also contended that the electors were not given adequate information on the projects. This argument is equally without merit. The 14-page proposal before the Commission was a public record, spelling out in detail each project (park) by listing its location and estimated cost (thus the precise total of $39,890,000). The public media, utilizing various means of communication and fulfilling its public trust to inform and to report events and community concerns, fully advised the voters on all different aspects of the bond issue, including the specific projects in an illustrated color map diagram and description of the locations of the exact and only projects encompassed in the bond issue.
The presentations in the proposal for the bonds were approved “in the sunshine”[5] by the City Commission, and having been widely publicized by an informed and civic-minded media, as mentioned above, we can only conclude that there was ample public knowledge of the projects involved, sufficient for an intelligent exercise by the public of its very important franchise.
We have completely and thoroughly considered the remaining issues presented by appellants. These arguments are not convincing and do not warrant discussion.
Accordingly, the comprehensive judgment by the prominent Chancellor validating and confirming the bonds is
Affirmed.
*325 ERVIN, CARLTON, BOYD and DEKLE, JJ., concur.
ROBERTS, C. J., concurs specially with opinion.

. During oral argument counsel for Railway tried to distinguish State v. Dade County, supra, by saying the County passed a detailed resolution in that case. This fact has no bearing on this issue concerning the contents of a ballot.

. Antuono v. City of Tampa, 87 Fla. 82, 99 So. 324 (1924).

. State v. City of St. Augustine, 235 So.2d 1 (Fla.1970) ; State v. Dade County, 39 So.2d 807 (Fla.1949) ; and State v. City of Daytona Beach, 160 Fla. 13, 33 So.2d 218 (1948).

. Fla.Stat. § 100.281: “Approval to issue bonds. — Should a majority of the votes cast in a bond election be in favor of approving the issuance of bonds, then the issuance of said bonds is deemed authorized in accordance with Section 12, Article VII of the State Constitution. In the event a majority of those participating did not vote in favor of approval of the issuance of the proposed bonds, then the issuance of those specified bonds is deemed to have failed of approval and it is unlawful to issue or attempt to issue the said bonds.” (emphasis ours)

. Fla.Stat. § 286.011 (1971), F.S.A.