455 So.2d 359 (1984)
Adrian WINTERFIELD, Appellant,
v.
TOWN OF PALM BEACH and the State of Florida, Appellees.
No. 64284.
Supreme Court of Florida.
July 19, 1984.
Rehearing Denied October 5, 1984.
Adrian Winterfield, pro. per.
John C. Randolph of Johnston, Sasser, Randolph & Weaver, West Palm Beach, for appellee Town of Palm Beach.
David H. Bludworth, State Atty. and Marta M. Suarez-Murias, Asst. State Atty., West Palm Beach, for State.
PER CURIAM.
This is an appeal from a circuit court judgment validating municipal bonds pursuant to chapter 75, Florida Statutes *360 (1983). We have jurisdiction. Art. V, § 3(b)(2), Fla. Const.
Electors of the Town of Palm Beach voted on a bond referendum on March 22, 1983. The proposed bond issue would raise $7 million to pay for a new police facility, a fire station, and a sewer compressor station. The ballot provided for a single vote to be cast on the entire bond issue, rather than allowing a separate vote to be cast for each project. Approximately three-quarters of those voting approved the bond issue.
Winterfield appeared as an intervenor at the circuit court validiation hearing held August 1, 1983, pursuant to chapter 75, and was permitted to intervene. He unsuccessfully challenged the validity of the bonds on two grounds, violation of the "single-purpose" rule and technical irregularities in the bonding process. The circuit court validated the bonds and Winterfield appealed to this Court. We affirm the judgment of validation.

I. THE SINGLE-PURPOSE RULE
The single-purpose rule was adopted by this Court in Antuono v. City of Tampa, 87 Fla. 82, 99 So. 324 (1924). The rule was stated as follows:

If there are two or more separate and distinct propositions to be voted on, each proposition should be stated separately and distinctly so that a voter may declare his opinion as to each matter separately, since several propositions cannot be united in one submission to the voters so as to call for one assenting or dissenting vote upon all the propositions; and elections are invalid where held under such restrictions as to prevent the voter from casting his individual and intelligent vote upon the object or objects sought to be obtained. The object of the rule preventing the submission of several and distinct propositions to the people united as one in such a manner as to compel the voter to reject or accept all is to prevent the joining of one local subject to others in such a way that each shall gather votes for all, and thus one measure, by its popularity or its apparent necessity, carries other measures not so popular or necessary and which the people, if granted the opportunity of separate ballots, might defeat. However, unless otherwise provided, it is proper to submit a number of propositions or questions at one time, providing the ordinance specifies each separate question or proposition as such, and provision is made by which the voters are given opportunity to vote upon each specific proposition or question independent of the other questions submitted at the same time. This may be done upon a single ballot, but the ballot must state each proposition separately, so that the voter may be able to express his will with reference to each question.
87 Fla. at 90-91, 99 So. at 326 (emphasis in original) (quoting 5 E. McQuillin, The Law of Municipal Corporation § 2198 (1921), identical language in current edition at 15 J. Latta & E. McQuillin, The Law of Municipal Corporation § 40.09 (3d ed. 1970).
The rule has been construed so that "if bonds are proposed and issued for two or more purposes that are so related as to amount to a single purpose, they may be combined and voted on as a single issue." State v. City of Daytona Beach, 160 Fla. 13, 14, 33 So.2d 218, 219 (1948). This is especially so when a single plan of financing is involved. State v. City of St. Augustine, 235 So.2d 1 (Fla. 1970). In every case considered by this Court since Antuono raising the single-purpose rule, the Court has found sufficient interrelationship between various projects to amount to a single purpose.[1]
*361 In the case before us, the town suggests that the three projects constitute a single purpose  to provide essential services. If we were to accept this rationale, the single-purpose rule would be effectively eviscerated. Instead, we find that, based on the facts of this case, more than one purpose will be served in issuing these bonds. At the very least, the public safety purpose of the police and fire projects is separate and distinct from the public health purpose of the sewer projects. We do not need to decide whether the police and fire projects are also separate and distinct purposes.
The Antuono single-purpose rule appears to require invalidation whenever voters have been asked to approve more than one purpose with a single vote. However, this Court has not lost sight of the underlying rationale for the rule, which is to prevent the electoral equivalent of logrolling, whereby "one measure, by its popularity or its apparent necessity, carries other measures not so popular or necessary and which the people, if granted the opportunity of separate ballots, might defeat." Antuono, 87 Fla. at 90, 99 So. at 326. While electoral logrolling is an evil to be avoided, per se invalidation may very well result in a greater evil. Thus, this Court has on one occasion recognized that a violation of the single-purpose rule does not render bonds invalid per se. In State ex rel. Wilkes v. Brandon, 92 Fla. 793, 110 So. 127 (1926), the mayor of Perry refused to sign bonds after the election and circuit court validation. The mayor raised the single-purpose rule in response to a petition for an alternative writ of mandamus to require the mayor to sign the bonds. This Court held:
It is not made to appear that such a purpose [to extend municipal waterworks and sewer systems] embraces "two or more separate and distinct propositions" as was contemplated by the rule announced in the Antuono case, and if it did so appear, we think that those desiring to avail themselves of the benefits of the rule, must do so in seasonable time. When power to issue the bonds is admitted, and they have in fact been issued and validated by decree of the Circuit Court as provided under the law of this State, and no fraud is charged, an attempt to invoke the rule in the Antuono case comes too late.
State ex rel. Wilkes v. Brandon, 92 Fla. at 795-96, 110 So. at 128. This Court also recognized the desirability of a "seasonable" challenge based on the single-purpose rule in State v. City of St. Augustine, 235 So.2d 1, 3 (Fla. 1970), where it noted in dicta that "the better procedure [rather than raising the issue in the validation proceeding] would be for the elector to question the sufficiency of the ballot in appropriate proceedings before  not after  the election has been held and the results proclaimed." (Footnote omitted.)
The Brandon and City of St. Augustine decisions found no violation of the single-purpose rule, and so there was no need to address the issue now before us, which is whether a challenge in the validation proceeding based on the single-purpose rule can be sustained. However, this Court has on repeated occasions found that pre-election irregularities do not necessarily require invalidating an election. An early indication of the Court's reluctance to invalidate elections came in State ex rel. Smith v. Burbridge, 24 Fla. 112, 130, 3 So. 869, 877 (1888), where the Court held that the "disposition and duty of courts are to sustain popular elections whenever they have been free and fair, and it is clear that the voters have not been deprived of their right to vote, and the result has not been changed by irregularity." A more definitive standard was stated in Carn v. Moore, 74 Fla. 77, 88-89, 76 So. 337, 340 (1917): "Republics regard the elective franchise as sacred, and the courts should not set aside an election because some official has not complied with the law governing elections, where the voter has done all in his power to cast his ballot honestly and intelligently, unless fraud has been perpetrated or corruption or coercion practiced to a degree to have affected the result." (Emphasis *362 added.) See also Marler v. Board of Public Instruction of Okaloosa County, 197 So.2d 506, 508 (Fla. 1967) (challenge to sufficiency of notice of bond referendum not grounds to invalidate election because "the violation of [statutory provisions for notice of election] cannot affect the validity of an election nor the result thereof where such election has been fairly held and there is no charge of fraud, corruption or coercion that is alleged to have affected the result thereof." (footnote omitted)).
In preserving elections in the face of post-election challenges to pre-election irregularities, this Court has found that a party is estopped from voiding an election where he was on notice of the irregularity before the election. "The aggrieved party cannot await the outcome of the election and then assail preceding deficiencies which he might have complained of to the proper authorities before the election." Pearson v. Taylor, 159 Fla. 775, 776, 32 So.2d 826, 827 (1947) (post-election challenge to sufficiency of petition which lead to election). See also State ex rel. Robinson v. North Broward Hospital District, 95 So.2d 434 (Fla. 1957) (failure to advertise bond referendum for full thirty days before election not grounds to invalidate election where no attack was made before election, no one claimed denial of right to vote, and no fraud was charged); McDonald v. Miller, 90 So.2d 124, 129 (Fla. 1956) (losing candidate, fully aware of blatant pre-election irregularities, barred from raising those irregularities as grounds to invalidate election: "One cannot stand by with full knowledge and acquiesce in this type of conduct prior to an election and then, after being disappointed by the results, successfully overturn the election."); Nelson v. Robinson, 301 So.2d 508 (Fla. 2d DCA), cert. denied, 303 So.2d 21 (Fla. 1974) (losing candidate's challenge to name placement on the ballot may have been enforceable before election, but not after); Speigel v. Knight, 224 So.2d 703, 706 (Fla. 3d DCA 1969) ("A different rule applies to technical or procedural irregularities which occur and are challenged prior to a general election than to those which are discovered and challenged after the general election, in the absence of corruption or fraud or a statutory penalty requiring an ouster of the elected official or a vacancy in the office.").
In the case before us, Winterfield's challenge is based on a bare assertion that the bond referendum violated the single-purpose rule. No substantial assertion is made that violation of the rule constituted fraud, corruption or coercion, or that the violation affected the result of the election. In fact, a strong majority of the voters favored the bond issue, and the record fails to show any substantial controversy which would indicate that any one of the projects was more or less popular or necessary than the others. The multiple purposes of the proposed bond issue were clear on the face of the notice of election and the ballot, and any one wishing to challenge on the point now raised could have made the attack before the election. No constitutional or statutory provision requires invalidating an election under these circumstances.
We therefore hold that violation of the single-purpose rule under the circumstances presented in this case does not require invalidation of the election.[2]

II. PROCEDURAL IRREGULARITY
Winterfield's second challenge in the validation proceeding centered on discrepancies in the description of the police facility project in documents related to the bonding process. The city had purchased the land for the police facility some time before the bond referendum. The proposed text for the referendum ballot embodied in the original town council resolution initiating the bonding process failed to mention that some of the bond revenue would be used to *363 reimburse the city for the prior expenditure for land. Later official notices and the ballot itself referred to "acquisition of land for and construction of a police facility."
Where discrepancies on a bond referendum ballot mislead the voters, or fail to adequately inform them of the project, the ballot is subject to invalidation. See Grapeland Heights Civic Association v. City of Miami, 267 So.2d 321 (Fla. 1972). We find no basis for applying this principle in this case. The title of the original resolution included reference to acquiring land for the police facility, as did all subsequent notices and resolutions and the ballot itself. The prior purchase of the land was a matter of public record, and information leaflets prepared by the town explaining the referendum outlined the situation.

III. THE VALIDATION HEARING
Besides the two issues raised before the circuit court, appellant also urges on appeal that the circuit court denied him due process and showed bias in the way he was treated during the hearing. The record shows that appellant first filed a pleading in the validation proceedings on the morning of the hearing, styled "Answer of Intervenor."
Winterfield complains that several irregularities occurred before and during the hearing because he was not granted intervenor status until the end of the hearing, and that at one point the judge demonstrated bias by speaking to him condescendingly. Our review of the record convinces us that the trial judge acted reasonably in light of the last-minute nature of appellant's appearance.
Accordingly, we affirm the judgment of validation of the circuit court.
It is so ordered.
BOYD, C.J., ADKINS, OVERTON, ALDERMAN, McDONALD, EHRLICH and SHAW, JJ., concur.
NOTES
[1] Grapeland Heights Civic Association v. City of Miami, 267 So.2d 321 (Fla. 1972) (recreational facilities in two areas of the city); State v. City of St. Augustine, 235 So.2d 1 (Fla. 1970) (conversion of building to city hall and fire station with related expenses); State v. County of Dade, 125 So.2d 833 (Fla. 1960) (highway projects); State v. Dade County, 39 So.2d 807 (Fla. 1949) (five bridges); State v. City of Daytona Beach, 160 Fla. 13, 33 So.2d 218 (1948) (city recreation facilities); State ex rel. Wilkes v. Brandon, 92 Fla. 793, 110 So. 127 (1926) (waterworks and sewers); Lewis v. Leon County, 91 Fla. 118, 107 So. 146 (1926) (county-wide road projects).
[2] We also note that even a pre-election challenge must be filed in a timely manner to allow adequate judicial review before the election. Cf. State ex rel. Pooser v. Wester, 126 Fla. 49, 170 So. 736 (1936), where a contest of a primary election was barred after the contestant waited more than four months, until less than one month before the general election, to make the challenge.